## BAILEY and Others *v.* THE UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

Submitted October 29th, 1883.—Decided December 3d, 1883.

*Power of Attorney—Statutes.*

Payment to an attorney in fact, constituted such by power of attorney executed by the claimants before the allowance of their claim by Congress or by the proper department, is good as between the government and such claimants, where the power of attorney has not been revoked at the time payment is made, notwithstanding the provisions of the act of July 29th, 1846, entitled " An Act in relation to the payment of claims," and the act of February 26th, 1853, entitled " An Act to prevent frauds upon the treasury of the United States." 9 Stat. 41, and 10 Stat. 170.

Suit to recover $200,070.34 from the United States, the same having been previously paid to a person holding the duly executed power of attorney of the plaintiffs; the plaintiffs claiming that the power was absolutely void under the provisions of the acts contained in 9 Stat. 41, and 10 Stat. 170.

By a decree passed March 25th, 1868, in the District Court of the United States for the Southern District of New York, certain sums of money were ascertained to be due on account of the illegal capture of the British steamer Labuan and her cargo by a cruiser of the United States.

On the 6th day of February, 1869, William Bailey, William Leetham, James Leetham, and Elizabeth Leetham, British subjects, executed and delivered a power of attorney—in which they described themselves as then or late owners of said steamer—constituting one A. E. Godeffroy, of New York, their attorney, with authority to receive from the government of the United States, and from all and every person or persons whom it might concern to pay or satisfy the same, all moneys then or which might thereafter become due and payable to them with reference to said vessel Labuan; upon receipt thereof, to execute acquittances, releases, and discharges for the same; and, upon non-payment thereof, to collect said moneys by such necessary actions, suits, or expedients as their attorney deemed proper.

By an act of Congress, approved July 7th, 1870, it was, among other things, provided " that there be paid out of any money in the treasury not otherwise appropriated, to William Bailey, William Leetham, and John Leetham, of England, or their legal representatives, owners of the British steamer Labuan, $131,221.30, with interest from June 2d, 1862, to the time of payment, and five thousand dollars without interest." The act declares that such sums are due under the before-mentioned decree of March 25th, 1868.

At the date of this act the owners, in different proportions, of the Labuan were William Bailey, William Leetham, and the executors and executrix of. John Leetham, who were William Leetham, James Leetham, and Elizabeth Leetham.

An account between the United States and said owners, based upon the said act of July 7th, 1870, having been examined, adjusted, admitted, and certified by the proper officers of the treasury, a warrant was made, upon which a draft was issued on the treasurer of the United States for the sum of $200,070.34, payable " to Wm. Bailey, Wm. Leetham, and John Leetham, of England, or their legal representatives, or order." This draft was delivered to Godeffroy, with this indorsement thereon : " Pay on the indorsement of A. E. Godeffroy, att'y in fact. R. W. Taylor, comptroller." The draft having been indorsed in the names of the payees, by himself as their attorney in fact, Godeffroy received the proceeds, but has never paid to the parties named in the act of Congress, or to any one for them, any part of the sum collected by him from the United States.

The treasury department refused, although requested by appellants or their agents, to make further payment. Thereupon this action was brought in the court of claims to recover the amount specified in the act of Congress. Judgment was rendered for the United States, and the present appeal questions the correctness of that judgment.

*Mr. J. Hubley Ashton* (*Mr. Nathaniel Wilson* was with him) for appellants : The moneys appropriated and required to be paid to the claimants, by the act of Congress of July 7th, 1870,

never having been paid to them, or their duly authorized agent, the liability arising upon the law, and the contract it imports, has not been discharged, and the United States are liable to the claimants for the moneys specified in the statute. After the adjustment of an account between the United States and the persons named in the act, on the 11th of July, 1870, a warrant was drawn on the next day directing the payment to them of the amount specified, upon which a draft, dated the 12th of July, was issued, payable " to Wm. Bailey, Wm. Leetham, and John Leetham, owners, or their legal representatives, or order, $200,070$\frac{34}{100}$." On this draft an indorsement was made by the comptroller, directing its payment " on the indorsement of A. E. Godeffroy, att'y in fact." This man, thereupon, indorsed the draft on the same day, the 12th of July, and got the money. The claimants have never received a dollar of it. The money was paid to Godeffroy upon a power of attorney given to him in England, in February, 1869, long before the passage of the act of Congress, by William Bailey, William Leetham, and the personal representatives of John Leetham; and which, of course, fulfilled none of the requirements of the act of July 29th, 1847, or the act of February 26th, 1853. This power of attorney was absolutely null and void; and no payment under it to Godeffroy could bind the claimants, or discharge the debt. Act of July 29th, 1846, 9 Stat. 41; Act of February 26th, 1853, 10 Stat. 170; *Coté's Case*, 3 Court of Claims, 64; *Pierce's Case*, 2 Court of Claims, 599; *United States* v. *Gillis*, 95 U. S. 407; *Spofford* v. *Kirk*, 97 U. S. 484, 489; *Becker* v. *Sweetzer*, 15 Minn. 427, 435. The claimants cannot be affected with any responsibility for the illegal payment of this money at the treasury to Godeffroy, and are not chargeable with any wrong or fault in connection with that transaction, and the United States are, and should be held, solely and exclusively responsible in law for the payment of the money to that person, and its consequent loss to the claimants. The fallacy of the argument on the other side consists in sedulously ignoring the character and relations of the claimants, who were British subjects, resident in their own country, and who knew nothing, and were not bound to know anything, of the acts of Congress of July

29th, 1846, and February 26th, 1853. The defence proceeds upon the idea that the claimants participated in the violation of law committed in the payment of this money to Godeffroy, and that the maxim, *in pari delicto potior est conditio defendentis*, furnishes the · r ˉɜ of decision in the case. If there was no *delictum* on the part of the claimants, there was no *par delictum* on their part, and the rule expressly requires equal wrong in order that the law should leave the parties where it finds them. "The maxim does not apply unless both the litigating parties are, *in delicto ;* it cannot be insisted upon as a defence, either by or against an innocent party." Broom's Legal Maxims, 724. No *delictum*, fault, or blame could be imputable to the claimants under any circumstances, in this transaction, unless they had actual knowledge of the acts of Congress which discredited and invalidated the power of attorney, which it is not shown they had. No one is presumed to know the law of a foreign country. 1 Story's Eq. Jur. § 140 ; *Haven* v. *Foster*, 9 Pick. 111 ; *Leslie* v. *Baillie*, 2 Y. & C. Ch. Cas. 91. It was the duty of the government to obey the act of 1853, and to protect these foreign claimants against the consequences of their own ignorance ; and there can be no reason for excusing it from the performance of its duty to them, because the claimants, without knowledge of its statutes, gave a power of attorney, which those statutes declared void, to the man who received the money. As the claimants had no knowledge of the acts of Congress, there was no fault, wrong, or negligence on their part in intrusting Godeffroy with their power of attorney, and the whole blame, in the transaction of the payment of this money to him at the treasury, is therefore imputable to the government, and the government is solely responsible for the consequences of his infidelity.

*Mr. Solicitor General* for the United States.

MR. JUSTICE HARLAN delivered the opinion of the court. After reciting the facts he continued :

It is contended, on behalf of appellants, that the power of attorney executed in 1869 to Godeffroy—upon the authority of

which alone was payment made to him—was, under the laws of the United States, absolutely null and void; consequently, no payment under it could bind the claimants or discharge the government from its obligation to pay the sums specified in the act of 1870.   This presents the controlling question on the present appeal.   Its determination depends upon the construction to be given to the act of July 29th, 1846, 9 Stat. 41, entitled " An Act in relation to the payment of claims," and to the first and seventh sections of the act of February 26th, 1853, 10 Stat. 170, entitled " An Act to prevent frauds upon the treasury of the United States."

The act of 1846 related to claims against the United States allowed by a resolution or act of Congress.   That statute directed that they should not be paid to any other person than the claimant, his executor or administrator, unless upon the production to the proper disbursing officer of a warrant of attorney executed " after the enactment of the resolution or act allowing the claim."   The first section of the act of 1853 declares that " all transfers and assignments hereafter made of any claim upon the United States, or any part or share thereof, or interest thereon, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, or orders, or other authorities for receiving payment of any such claim, or any part or share thereof, shall be absolutely null and void, unless the same shall be freely made and executed in the presence of at least two attesting witnesses, after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."   That act further provides (§ 7) that its provisions and those of the act of 1846 shall " apply and extend to all claims against the United States, whether allowed by special acts of Congress, or arising under general laws or treaties, or in any other manner whatever."

These enactments have been under examination in several cases heretofore decided in this court, some of which are now relied on to support the proposition that officers of the treasury were forbidden by statute from recognizing Godeffroy under any circumstances as agent of claimants, with authority

as between them and the government to receive the warrant and draft when issued. But we do not understand that any of these cases involved the precise question now presented for determination.

In *United States* v. *Gillis*, 95 U. S. 407, it was ruled that a claim against the United States could not be assigned so as to enable the assignee to bring suit against the government in his own name in the court of claims. In *Spofford* v. *Kirk*, 97 U. S. 484, the question was as to the validity of certain orders drawn by a claimant, before the allowance of his claim, upon the attorneys having it in charge, directing the latter to pay certain sums out of the proceeds when collected, and which orders, being accepted by the attorneys, were purchased by Spofford in good faith and for value. Upon the treasury warrant being issued, the claimant refused to admit the validity either of the orders he had given or the acceptances made by his attorneys. Thereupon Spofford sought, by suit against the claimant and his attorneys, to enforce a compliance with the orders and acceptances of which he had become assignee and holder. The court adjudged that the transfer or assignment to Spofford was, under the act of 1853—carried into the Revised Statutes, § 3477—a nullity as between him and the claimant. No question arose in that case as to what would have been the effect upon the rights of the claimant had the officers of the government recognized the assignment of Spofford. In *Erwin* v. *United States*, 97 U. S. 392, it was ruled that the act of 1853 applied to cases of voluntary assignments of demands against the government, and did not embrace cases where the title is transferred by operation of law. "The passing of claims to heirs, devisees, or assignees in bankruptcy," said the court, "are not within the evil at which the statute aimed."

But what was said in *Goodman* v. *Niblack*, 102 U. S. 556, seems to be more directly in point. That was the case of a voluntary assignment by a debtor of his property for the benefit of creditors, including his rights, credits, effects, and estate of every description. The assignment embraced a claim of the assignor arising under a contract with the United States. It

was adjudged in the court of original jurisdiction that, as to that claim, the assignment was rendered invalid by the act of 1853. But the language of this court, speaking by Mr. Justice Miller, was :

" It is understood that the circuit court sustained the demurrer, under pressure of the strong language of the opinion in *Spofford* v. *Kirk*. We do not think, however, that the circumstances of the present case bring it within the one then under consideration, or the principles there laid down. That was a case of the transfer or assignment of a part of a disputed claim, then in controversy, and it was clearly within all the mischiefs designed to be remedied by the statute. Those mischiefs, as laid down in that opinion, and in the others referred to, are mainly two : 1. The danger that the rights of the government might be embarrassed by having to deal with several persons instead of one, and by the introduction of a party who was a stranger to the original transaction ; 2. That by a transfer of such a claim against the government to one or more persons not originally interested in it, the way might be conveniently opened to such improper influences in prosecuting the claim before the departments, the courts, or the Congress, as desperate cases, where the reward is contingent on success, so often suggest." "But these considerations," the court proceeded to say, " as well as a careful examination of the statute, leave no doubt that its sole purpose was to protect the government, and not the parties to the assignment."

These cases show that the statutes in question are not to be interpreted according to the literal acceptation of the words used. They show that there may be assignments or transfers of claims against the government, such as, for instance, those passed upon in *Erwin* v. *United States*, and in *Goodman* v. *Niblack*, which are not forbidden by the statutes.

In the case before us no question arises as to the transfer or assignment of a claim against the government. The question is whether payment to one who has been authorized to receive it, by the power of attorney executed before the allowance of the claim by the act of Congress was good as between the government and the claimant, where, at the time of payment,

such power of attorney was unrevoked. If, in respect of transfers or assignments of claims, the purpose of the statute, as ruled in *Goodman* v. *Niblack*, was to protect the government, not the claimant in his dealings with the government, it is difficult to perceive upon what ground it could be held that the statutory inhibition upon powers of attorney in advance of the allowance of the claim and the issuing of the warrant, can be used to compel a second payment after the amount thereof has been paid to the person authorized by the claimant to receive it. A mere power of attorney given before the warrant is issued—so long at least as it is unexecuted—may undoubtedly be treated by the claimant as absolutely null and void in any contest between him and his attorney in fact. And it may be so regarded by the officers of the government whose duty it is to adjust the claim and issue a warrant for its amount. But if those officers chose to make payment to the person whom the claimant, by formal power of attorney, has accredited to them as authorized to receive payment, the claimant cannot be permitted to make his own disregard of the statute the basis for impeaching the settlement had with his agent. To hold otherwise would be inconsistent with the ruling heretofore made—and with which, upon consideration, we are entirely satisfied—that the purpose of Congress, by the enactments in question, was to protect the government against frauds upon the part of claimants and those who might become interested with them in the prosecution of claims, whether before Congress or the several departments. The title of the act of 1853 suggests this purpose. It is to prevent frauds upon the treasury. An effectual means to that end was to authorize the officers of the government to disregard any assignment or transfer of a claim, or any power of attorney to collect it, unless made or executed after the allowance of the claim, the ascertainment of the amount due thereon, and the issuing of the warrant for the payment thereof. Other sections of the statute —those forbidding officers of the government and members of Congress from prosecuting or becoming interested in claims against the government, and those punishing the bribery or undue influencing of such officers or members—sustain the view

that what was in the mind of Congress was to protect the government in the matter of claims against it. But if the protection of claimants was at all in the mind of Congress when passing the acts of 1846 and 1853, it is quite certain that the courts should not, to the injury of the government, extend that protection to those that elected not to avail themselves of the provisions of those statutes. Here it is not denied that the power of attorney executed in 1869 embraces, and was intended to embrace, the claims arising out of the decree of 1868, from whatever source the money in satisfaction of it might be derived. Nor is it pretended that such power of attorney had been revoked prior to the adjustment and payment of the claims in question.

It seems to us—looking at the mischiefs intended to be remedied by these statutes and giving the words of Congress a reasonable interpretation—that the claimants were not at liberty, as between the government and themselves, to question the right of the officers of the treasury to recognize the unrevoked authority which the latter had given to Godeffroy, without restriction as to time, to receive from any one whom it might concern to pay all sums of money due or to become due and payable on account of the seizure of the vessel *Labuan*.

The judgment must, therefore, be affirmed.

*It is so ordered.*