Nott, J,
dissenting:
These cases involve no question of liability on the part of the Government. The questions which are involved relate simply to the distribution of the fund, claimed by two adverse parties, which fund the Government has brought into court by bill of interpleader and seeks to have disposed of so as to be exempt from future liability to either party. The fund is made up of two elements: of the 10 per cent reserved from moneys paid upon a building contract to the original contractor; of the 10 per cent reserved from moneys paid to the surety who completed the building after his principal, the contractor, had failed. The adverse claimant is the bank which advanced money to the contractor to erect the building upon the faith of a pledge of the 10 per cent reserved by the Government.
*212 Concerning the distribution of the fund, tbe following are my conclusions:
1. The natural equities of these cases are (1) that Hitchcock should recover money which he earned in finishing the building of the Government after his principal had failed; (2) that the bank should recover moneys which went into the building upon the faith of an arrangement sanctioned by the Secretary of the Treasury; (3) that Hitchcock, as principal, should recover by virtue of subrogation whatever remnant of the fund may'remain. That there may be special reasons to the contrary or impediments in the way of giving effect to these equities may be a fact, but that these are the natural equities of the situation apart from special reasons to the contrary seems unquestionable.
2. The rights of Hitchcock are distinct. The first is for his own money, earned with the concurrence of the defendants after they had refused to allow the work to be continued by the insolvent contractor (Behan’s Case, 110 U. S. R., 339). The second is an equity. Subrogation does not transfer the legal title to a chose in action from the principal to the surety, and Sundberg could not assign his 10 per cent to Hitchcock if he would. All that the latter has in it is an equity.
3. By subrogation, Hitchcock took Sundberg’s rights as they were, neither more nor less. This part of the case stands, in estimating equities, precisely as if Sundberg were the party, and not Hitchcock. Hitchcock can ask no more and receive no more by subrogation than Sundberg could ask and receive if he had not failed to carry out his contract.
4. As regards the bank. The Government had an interest in having Sundberg’s contract carried out and was not a stranger to his transaction with the bank. It was perfectly proper for the Secretary of the Treasury, with the conseut of Sundberg, to protect both the Government and the bank by giving the assurance which he did. This arrangement was not an assignment of a chose in action nor the sale of a claim against the United States, for none then existed to be assigned or sold. It was the admission of the bank, with the consent of the United States, to an interest in the future performance of the contract. It made the bank a quasi special partner in the work, furnishing funds to erect the building and receiving an equitable lien on a specified portion of the *213 price to be paid for it. This arrangement may not have bound the United States while it continued executory; but, when the money had been advanced, the building completed, and the 10 per cent ascertained, the' Secretary of the Treasury could lawfully carry it into execution (Bailey's Case, 109 U. S. R., 432), and his assurance to the bank required that he should. But Hitchcock had then appeared claiming a superior or conflicting equity. The Secretary therefore did what he also had power to do; instead of sending the draft to the bank, as the arrangement required, he ascertained the amount due upon the contract and sent the fund and the parties into this court for the determination of the equities affecting it.
5. The causes of action in these cases being equities, the court must deal with them as such or not at all. Hitchcock comes into equity asking to be subrogated in the rights of Sundberg; the bank comes into equity asking the enforcement of its equitable lien on the fund; the United States comes into equity bringing the fund with them and placing it at the disposal of the court by proceedings in the nature of a bill of interpleader; \Sundberg comes into equity confessing that he has no right which is entitled to the protection of the court. The only judgment at law that can be rendered in these cases is a judgment for the unpaid balance which Hitchcock earned by his work on the building. The legal title to Sundberg’s ten per cent is not in Hitchcock.
6. As to the disposition of the fund. The $2,882.32 which Sundberg had on deposit when the arrangement was made with the bank went into the building, and should be regarded as an advance, inasmuch as the bank could have set it off against his then existing indebtedness.
The $1,350 advanced by the bank in July did not go into the building, and should not be deducted from the money earned by Hitchcock unless by his own acts or omissions he is estopped from asserting his superior equity in it. He knew that Sund-berg borrowed money from the bank, but he did not know that this unusual security of an equitable lien on the ten per cent reserve had been given. If the bank had given him notice of its hen for future advances, he would have been bound to have given the bank notice that Sundberg’s contract had come to an end. But the bank did not give this notice, and neither the Treasury in Washington nor the superintendent’s office in *214 Galveston was a public record office in which, he could search for liens, and he was not chargeable with knowledge of what was filed there.
The bank should recover—
Sundberg’s balance, in its possession January 24, 1890, which went into the building. $2,882.32
The money advanced February 8. 3,500.00
The money advanced April 18.-. 1,200.00 -
Amounting to.1. 7,582.32
And interest, say. 900.00
8,482.32
Hitchcock should recover—
His 10 per cent reserved by the defendants_ $2,234.00
The balance of the fund in court. 1,143.28
- 3,377.28
The total amount of the fund. 11,859.60
7. As to the judgment in Sundberg’s suit: It is, I think, an attempt to dispose of matters which exist only in equity by a judgment at law. The fond which the United States have brought into court by a bill of interpleader consists of $2,234, being the 10 per cent earned and owned by Hitchcock, and of $9,625.60, being the 10 per cent earned by Sundberg, but transferred in equity to Hitchcock by subrogati on. Sundberg never completed his contract, never became entitled in his own right to the 10 per cent, and is the one party claimant before the court who has not a right, nominal or real, legal or equitable, and who does not assert one. Concerning him the Secretary of the Treasury has not consented to a judgment, has not brought the fund into court, has not instituted these proceedings. If the judgment at law now rendered in the name of Sundberg to the use of Hitchcock* be based on the voluntary action of Sundberg it will be an evasion of the statute voiding assignments; if it be based on the subrogation of Hitchcock as surety to the rights of Sundberg as principal it will be the transmutation of an equitable right into a chose in action for the benefit of Hitchcock, disregarding the superior equity of the bank.

 The judgment was subsequently entered directly in favor of Hitchcock, and not in the name of Sundherg to the use of Hitchcock, as was contemplated when the above opinion was read.