# BUTLER *v.* GORELEY.

ERROR TO THE SUPERIOR COURT OF THE STATE OF MASSACHUSETTS.

No. 20.    Argued November 21, 22, 1892. — Decided December 5, 1892.

One T., of Boston, went into insolvency in Massachusetts, in June, 1883, and a deed of assignment was made to his assignee in July, 1883. In June, 1863, T. was on board an American vessel, which was captured and burned by the Georgia, a tender of the Confederate cruiser Alabama, and thereby lost his personal effects and sustained other losses. Under the act of Congress of June 5, 1882, c. 195 (22 Stat. 98), T., in January, 1883, filed a claim, in the Court of Commissioners of Alabama Claims, claiming compensation for his losses, and the court gave a judgment in his favor. In February, 1885, a draft for the amount was issued by the Treasury, payable to the order of T. and was sent to, and received at Boston. T. died at Boston four days later, intestate. In March, 1885, T.'s widow was appointed his administratrix by the Probate Court of the District of Columbia. In April, 1885, she gave a power of attorney to one B. to endorse the draft. He did so and collected the amount, which he retained. The assignee in insolvency sued B. in a state court of Massachusetts, to recover the amount and had judgment. On a writ of error from this Court, *held*,

(1.) The decision and award of the Court of Commissioners of Alabama Claims was conclusive as to the amount to be paid on the claim, but not as to the party entitled to receive it; and the claim was property which passed to the assignee in insolvency, under the assignment to him, although it was made prior to the decision of the Court of Commissioners;

(2.) The claim and its proceeds were assets within the jurisdiction of Massachusetts;

(3.) B. was liable to the assignee in insolvency;

(4.) § 3477 of the Revised Statutes did not apply to the assignment in insolvency;

(5.) The insolvency law of Massachusetts was not unconstitutional;

(6.) It was not necessary, after the repeal of the bankruptcy act of 1867, that the insolvency statute of Massachusetts should have been reënacted in order to become operative.

THE case is stated in the opinion.

*Mr. Benjamin F. Butler* for plaintiff in error.

*Mr. George E. Jacobs* and *Mr. Charles Levi Woodbury* for defendant in error. *Mr. W. H. H. Andrews* was with *Mr. Woodbury* on the brief:.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action of contract, brought in the Superior Court for Suffolk County, Massachusetts, by writ, dated October 20, 1886, returnable on the first Monday of November, 1886, by Charles P. Goreley, assignee in insolvency of the estate of Isaac H. Taylor, an insolvent debtor, against Benjamin F. Butler, to recover the sum of $5874.15, and interest thereon from April 6, 1885. The particulars of the plaintiff's demand, as set forth in the writ, are to the purport and effect contained in the agreed facts hereinafter set forth. The defendant appeared in the suit, and filed an answer denying all the allegations in the writ and declaration. A jury trial was waived by a written agreement, and the parties filed the following statement of agreed facts: ·

"Isaac H. Taylor, of Boston, in said ʻcounty, mentioned in the declaration, filed his voluntary petition in insolvency, in said county, June 20, 1883, on which he was duly adjudged an insolvent debtor, and his assignee was appointed on the 20th day of July in the same year, and his deed of assignment was thereupon issued to him on the same day, a copy of which is annexed and made a part hereof and is marked ʻA,' and the plaintiff accepted the same, proceeded to the discharge of his duties, and published due notice of his appointment in the Boston Post in September, 1883, a newspaper published at Boston, Mass.

"The second and third meetings of the creditors were duly held and due notice thereof published in newspapers at said Boston, at which claims were proved, but no discharge was granted to the insolvent. The schedule of assets of said Taylor did not disclose the claim hereinafter mentioned. Prior to said insolvency said Isaac H. Taylor, on or about the 14th day of June, 1863, in or near latitude 23 degrees south, longitude 43 degrees west, was a passenger on board the bark

Good Hope, which was captured and burned by a tender of the Confederate cruiser Alabama named the Georgia; and said Isaac H. Taylor, being a passenger lawfully on board said bark Good Hope, an American vessel, by reason of said capture and burning of said bark, became the loser of his personal effects, expenses and other losses, amounting in all, as he claimed, to five thousand three hundred and fifty dollars, with interest thereon.

"Whereupon, after Congress had passed an act known as an act in regard to Alabama Claims, by which citizens of the United States proving their losses should be indemnified out of the Treasury of the United States, from the proceeds of the money paid to the United States by Great Britain under the Geneva award appointed under the treaty of Washington, which was then in the Treasury of the United States, said Taylor filed his claim on the 13th day of January, 1883, which claim was duly prosecuted and heard, and was adjudicated in favor of Isaac H. Taylor by the Court of Commissioners of Alabama Claims, in the sum of three thousand seven hundred and eighty-five dollars and twenty-five cents, actual loss and damage sustained by him, with interest thereon at the rate of four per cent per annum from June 14, 1863, to March 31, 1877, which interest amounted to the sum of two thousand and eighty-eight dollars and ninety cents, making a total sum adjudicated to him of five thousand eight hundred and seventy-four dollars and fifteen cents. No other assets of value came to the hands of the plaintiff as assignee aforesaid.

"That on the 20th of February, 1885, a draft issued from the Treasury, a copy whereof, with the endorsements thereon, is hereto annexed and made a part hereof and is marked 'B,' payable to the order of Isaac H. Taylor, for said sum, and was thereupon duly mailed to the care of Benjamin F. Butler, the defendant, E. J. Hadley and E. L. Barney, attorneys of record, at 16 Pemberton Square, Boston, which was received by them in due course of mail.

"On February 24, 1885, Isaac H. Taylor died at said Boston intestate. On March 31, 1885, Sallie B. Taylor, of Duxbury, Massachusetts, the widow of said Isaac H. Taylor, upon her

petition filed March 7, 1885, and on giving bond with sureties, was duly appointed by the Probate Court of the District of Columbia administratrix of the personal estate of said Isaac H. Taylor. There has been no appraisal, nor has she as administratrix filed any inventory nor done any act, so far as the records show, since the letters of administration issued to her.

"That on April 4, 1885, said Sallie B. Taylor executed a power of attorney, a copy of which is annexed and made a part hereof, and is marked 'C,' to said Butler, the defendant, to endorse said draft and receive payment thereon from the Treasury of the United States, and thereupon said Butler received said sum of five thousand eight hundred and seventy-four dollars and fifteen cents; that said Butler thereafterwards paid, before the commencement of this suit, the attorney's fees upon said draft, amounting to $1087, and on the 26th day of July, 1886, he paid the sum of one hundred and twenty-six dollars for undertaker's services, but without the knowledge of the plaintiff.

"It is further agreed, that the acts passed June 23, 1874, and June 5, 1882, made provision for the payment of losses suffered through certain cruisers called the inculpated cruisers, among which were the Alabama and her tenders, of which said Georgia was one.

"That when said Sallie B. Taylor, the widow, applied to said Butler to have said money paid to her, he advised her that that could not be done unless she took out administration in the District of Columbia, and she accompanied him to Washington, and there applied to the court for such letters of administration, and said Butler, the defendant, signed her bond as such administratrix, she having no property in the District of Columbia, and made an agreement with her to retain the draft and the moneys received thereon as security for his becoming surety on said bond. Owing to the claim made in this suit said administration has not yet been settled and concluded in said District, but awaits the determination thereof.

"That demand was made upon the defendant for said draft,

by the plaintiff in person, at Boston, before the filing of said petition for administration by said Sallie B. Taylor, and defendant was at the same time notified by the plaintiff that he was assignee, as aforesaid, of the estate of said Taylor, and that as such assignee he was entitled to the amount of said draft and the proceeds thereon. The treaty of Washington, the award of the arbitrators thereunder, and the acts of Congress of June 23, 1874, and June 5, 1882, the laws of Maryland as continued in force by the laws of the District of Columbia, and the laws of the District of Columbia may be referred to and are made a part hereof.

"If the court find that the plaintiff is entitled to recover, judgment shall be entered for the plaintiff for the sum of forty-six hundred and sixty-one and $\frac{15}{100}$ dollars, and interest thereon from June 1st, 1887; otherwise, plaintiff to become nonsuit."

The deed of assignment annexed to the agreed facts, and marked "A," set forth that Charles P. Goreley had been duly appointed assignee in the case of Isaac H. Taylor, insolvent debtor, by the court of insolvency of Suffolk County, and that the judge of that court, by virtue of the authority vested in him by the laws of Massachusetts, thereby conveyed and assigned to said assignee all the estate, real and personal, of Taylor, including all the property of which he was possessed, or which he was interested in or entitled to, on June 20, 1883, excepting property exempt from attachment, in trust for the uses and purposes, with the powers and subject to the conditions and limitations, set forth in said laws. The deed was executed by the judge of the court of insolvency on July 20, 1883.

The draft referred to in the agreed facts, and marked "B," was dated February 20, 1885, and was drawn by the Treasurer of the United States on the Assistant Treasurer at Boston, Massachusetts, payable to the order of Isaac H. Taylor, for $5874.15, and was endorsed on the back as follows: "Sallie B. Taylor, adm'x of Isaac H Taylor, by her attorney-in-fact, Benj. F. Butler. Payable to Benj. F. Butler, attorney. Authority on file. J. R. Garrison, Dep'ty First Comptroller." It was paid by the Treasurer of the United States on April 6, 1885, and was accompanied by a power of attorney, marked

" C," dated April 4, 1885, executed by Sallie B. Taylor, appointing Benjamin F. Butler her attorney to endorse her name on said draft, and to receive and receipt for the money. This power of attorney was duly acknowledged before a notary public of the county of Suffolk, Massachusetts, on April 4, 1885.

On November 15, 1887, the case was heard on the agreed facts, by the Superior Court, which on that day entered a judgment for the plaintiff in the sum of $4789.33. The defendant appealed to the Supreme Judicial Court of Massachusetts, which, on May 4, 1888, transmitted a rescript to the Superior Court, directing its clerk to enter a judgment for the plaintiff for $4661.15 and interest thereon from June 1, 1887. The Superior Court, on June 4, 1888, entered a judgment in favor of the plaintiff, against the defendant, for $4943.14 damages, and $34.41 costs. The defendant has brought the case to this court by a writ of error.

The opinion of the Supreme Judicial Court of Massachusetts is reported in 147 Mass. 8. That court held that, under the insolvent law of the State, (Public Statutes, c. 157, § 46,) which provided that "the assignment shall vest in the assignee all the property of the debtor, real and personal," the claim in question was " property; " that under the act of Congress of June 5, 1882, c. 195, 22 Stat. 98, proceedings under which had been begun by Taylor, on January 13, 1883, before his petition in insolvency was filed on June 20, 1883, the claim was property which passed by the assignment; that there was no force in the objection that the claim could not be assigned in insolvency before it was allowed by the Court of Commissioners of Alabama Claims; and that the claim was clearly within the general intent of the Public Statutes, c. 157, §§ 44 to 46, and the specific words, " rights of action for goods or estate, real or personal."

The court refused to consider the question of the constitutionality of the state insolvent law, holding that the question was settled affirmatively by the decision in *Ogden* v. *Saunders*, 12 Wheat. 213, and the cases which had followed it. The court further held that the action could be maintained against

the defendant; that the plaintiff had no notice of the proceeding instituted by Taylor in the Court of Commissioners of Alabama Claims until Taylor had got his judgment and a draft for the amount was in the defendant's hands; that then the plaintiff demanded the draft, and was entitled to receive it; that the fact that the defendant subsequently advised the widow of Taylor to take out administration at Washington, that she did so, and that he signed her bond, with an agreement that he should retain the draft as security, could not better his case; that the effect of the judgment of the Court of Commissioners of Alabama Claims was to appropriate a fund to the claim, and to transfer the claim to that fund, leaving the question of title open to subsequent litigation in the ordinary courts; and that the statute did not leave the United States subject to be charged a second time, notwithstanding a payment by the United States to the wrong person, any more than, on the other hand, it made the decision of the Commissioners' Court conclusive as to the person entitled to the bounty of the United States.

The assignments of error made in this court by the defendant are as follows: "1. That the state court, against the contention of the defendant, held and declared that the laws of insolvency of the State could and did affect, assign and transfer the claim of Isaac H. Taylor against the United States, being in the form of an adjudication of the Court of Alabama Claims, as against his widow, his administratrix in the District of Columbia. 2. That the state court decided against the contention of the defendant, that the insolvent law of Massachusetts transferred the property of said Isaac H. Taylor, to wit, a claim against the United States, evidenced by an award of the Court of Commissioners of Alabama Claims. 3. That the state court decided against the contention of the defendant, that the insolvent laws of Massachusetts, as enforced, took effect upon the person and property of said Isaac H. Taylor, as a system of bankruptcy, in contravention of the Constitution and laws of the United States."

We regard this case as controlled by the decision of this court in *Williams* v. *Heard*, 140 U. S. 529. In that case, it

was held that the decisions and awards of the Court of Commissioners of Alabama Claims, under the statutes of the United States, were conclusive as to the amount to be paid on each claim adjudged to be valid, but not as to the party entitled to receive it; and that a claim decided by that court to be a valid claim against the United States was property which passed to the assignee of a bankrupt, under an assignment made prior to the decision of the Commissioners' Court.

Both parties to the present suit were citizens of Massachusetts, and Taylor, at the time of his insolvency and to the time of his death, resided at Boston. His wife, who became his widow, resided at Duxbury, in Massachusetts. The proceeds of Taylor's claim were in Massachusetts, in the shape of the draft of the Treasurer of the United States, dated February 20, 1885. It was mailed that day to the defendant at Boston, and received there in due course of mail, previous to the death of Taylor, and was payable to Taylor's order by the Assistant Treasurer of the United States at Boston; and, after the death of Taylor, the proceeds of the draft were in the hands of the defendant at Boston. Taylor's claim and its proceeds became assets within the jurisdiction of Massachusetts, and the right to them had there vested in the plaintiff, before the death of Taylor. No person had a right to take the draft or its proceeds out of the jurisdiction of that State, on the facts of this case. *Cole* v. *Cunningham*, 133 U. S. 107.

The plaintiff having demanded the draft from the defendant at Boston, before Mrs. Taylor applied for letters of administration in the District of Columbia, and then notified him that the plaintiff was assignee in insolvency of Taylor, and entitled to the proceeds of the draft, Mrs. Taylor had no right to them as against the plaintiff; and the defendant became liable to the plaintiff for them. The defendant had no right to withdraw the draft from administration in Massachusetts, and transfer its proceeds to the District of Columbia for ancillary administration. On the death of Taylor, the attorneyship of the defendant for him became extinct. The title of the plaintiff, as assignee in insolvency, accrued before the recovery of judgment by Taylor against the United States in the Court of

Commissioners of Alabama Claims, and before the death of Taylor.

The defendant raises the point that if there was any claim against the United States due to Taylor at the time of the assignment in insolvency, such assignment of it was prohibited by § 3477 of the Revised Statutes of the United States, which provides as follows: "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment or warrant of attorney to the person acknowledging the same."

As to this point, the Supreme Judicial Court of Massachusetts said, that § 3477 did not apply to assignments in bankruptcy, although upon a voluntary petition, *Erwin* v. *United States*, 97 U. S. 392, and, by parity of reasoning, did not apply to assignments in insolvency. Sections 44, 46 and 51 chapter 157 of the Public Statutes of Massachusetts read as follows: "Sect. 44. The judge shall, by an instrument under his hand, assign and convey to the assignee all the estate real and personal of the debtor, except such as is by law exempt from attachment; and all his deeds, books and papers relating thereto." "Sect. 46. The assignment shall vest in the assignee all the property of the debtor, real and personal, which he could have lawfully sold, assigned or conveyed, . . . all debts due to the debtor or any person for his use, and all liens

and securities therefor, and all his rights of action for goods or estate, real or personal, and all his rights of redeeming such goods or estate." "Sect. 51. He" [the assignee] "shall have the like remedy to recover all the estate, debts and effects in his own name, as the debtor might have had if no assignment had been made." The Supreme Judicial Court said, in the present case, that, if it should be suggested that, although the claim was property of the insolvent, it was not property which he could have lawfully assigned in person, and therefore was not within the words of the statute of the State, the answer was that it was clearly within the general intent of §§ 44 and 46, and within the specific words, "rights of action for goods or estate, real or personal." Taylor's right vested before it was assigned to the plaintiff, and the plaintiff took it in the lifetime of Taylor.

In *United States* v. *Gillis*, 95 U. S. 407, 416, this court, speaking of § 1 of the act of February 26, 1853, c. 81, (10 Stat. 170), now embodied in § 3477 of the Revised Statutes, said, that there might be assignable claims against the United States, which could be sued on in the Court of Claims, in the name of the assignee; and that "there are devolutions of title by force of law, without any act of parties, or involuntary assignments compelled by law, which may have been in view."

In *Erwin* v. *United States*, 97 U. S. 392, 397, this court said, speaking of the act of 1853, that it applied only to cases of voluntary assignment of demands against the government, and also: "It does not embrace cases where there has been a transfer of title by operation of law. The passing of claims to heirs, devisees or assignees in bankruptcy are not within the evil at which the statute aimed; nor does the construction given by this court deny to such parties a standing in the Court of Claims."

In *Goodman* v. *Niblack*, 102 U. S. 556, the act of 1853 was under consideration. A person had made an assignment, in 1860, for the benefit of his creditors, which included all his rights, effects, credits and property of every description; and this court held that the assignment, although it covered whatever might be due to him under a contract which he had with

the United States for the transportation of the mails in steam vessels, was not within the prohibition of the act of 1853, nor in violation of public policy. It said (p. 560): "In what respect does the voluntary assignment for the benefit of his creditors, which is made by an insolvent debtor, *of all his effects,* which must, if it be honest, include a claim against the government, differ from the assignment which is made in bankruptcy? . . . We cannot believe that such a meritorious act as this comes within the evil which Congress sought to suppress by the act of 1853." See, also, *Wyman* v. *Halstead,* 109 U. S. 654; *Taylor* v. *Bemiss,* 110 U. S. 42; *Williams* v. *Heard,* 140 U. S. 529, 540.

In *Bailey* v. *United States,* 109 U. S. 432, 438, the cases of *Erwin* v. *United States* and *Goodman* v. *Niblack,* were cited as showing that there might be assignments or transfers of claims against the government, such as, for instance, those passed upon in those two cases, which were not forbidden by the act of 1853.

In *St. Paul & Duluth Railroad* v. *United States,* 112 U. S. 733, 736, this court cited *Erwin* v. *United States,* as holding that the assignment by operation of law to an assignee in bankruptcy was not within the prohibition of § 3477 of the Revised Statutes; and also *Goodman* v. *Niblack,* as holding that a voluntary assignment by an insolvent debtor, for the benefit of creditors, was valid to pass title to a claim against the United States; but it held that the case then before it was within the prohibition of the statute, because it involved a voluntary transfer by way of mortgage to secure a debt, finally completed and made absolute by a judicial sale.

As to the point, made by the defendant, that the insolvency law of Massachusetts was unconstitutional, we think there is no force in it, in view of the decisions of this court on the subject. *Sturges* v. *Crowninshield,* 4 Wheat. 122; *Ogden* v. *Saunders,* 12 Wheat. 213; *Boyle* v. *Zacharie,* 6 Pet. 348; *Cook* v. *Moffat,* 5 How. 295; *Bank of Tennessee* v. *Horn,* 17 How. 157; *Baldwin* v. *Hale,* 1 Wall. 223; *Baldwin* v. *Bank of Newbury,* 1 Wall. 234; *Gilman* v. *Lockwood,* 4 Wall. 409; *Crapo* v. *Kelly,* 16 Wall. 610; *Cole* v. *Cunningham,* 133 U. S.

107; *Geilinger* v. *Philippi*, 133 U. S. 246; *Brown* v. *Smart*, 145 U. S. 454.

Nor is there any force in the position taken by the defendant, that it was necessary, after the repeal in 1878 of the bankruptcy act of 1867 and of the provisions of the Revised Statutes of the United States in regard to bankruptcy, that the insolvency statute of Massachusetts should have been reenacted in order to become operative. *In re Rahrer*, 140 U. S. 545. The repeal of the bankruptcy act of the United States removed an obstacle to the operation of the insolvency laws of the State, and did not render necessary their reënactment.

*Judgment affirmed.*