# IN THE MATTER OF JUAN BOUCET, Bankrupt.

San Juan, Bankruptcy, No. 95.

### PRIORITY OF PUBLIC DOCUMENT.

Bankruptcy—Priority of Public Instrument.

    1. A priority is given by the Porto Rican Civil Code, § 1825, to a debt otherwise allowed privilege, if it appears in a public instrument.

Priority—Claim by Agent.

    2. If a party who is an agent of another claimant sets up a priority for himself, it will not be allowed except by allowing also his principals opportunity to amend for the same purpose.

Code of Commerce—How far Valid.

    3. The Code of Commerce covers all partnership and commercial dealings, and part of it originally covered bankruptcy and preferences of creditors. As to real rights it adopts the mortgage law.

Insolvency Law—Bankruptcy Law.

    4. Local insolvency laws are suspended by the bankruptcy act, but revived upon the repeal of that act. This applies to the insolvency or bankruptcy sections of the Porto Rico Code of Commerce.

Public Document—Priority.

    5. A public document entered into before a notary and filed in the

notary's archives is open to public inspection, and a copy of the index of notarial acts is filed with the supreme court, and sometimes in the Mercantile Registry. Giving such an instrument priority does not violate the Constitution or fundamental legal principles.

Commercial Dealings—Civil Code.

6. Section 1825 of the Porto Rico Civil Code does not apply to mercantile transactions as such. The priority mentioned does not attach to mercantile transactions.

Opinion filed January 4, 1915.

Mr. *Herminio Miranda* for Gandia & Stubbe.

HAMILTON, Judge, delivered the following opinion:

This was a voluntary proceeding in bankruptcy, and in the schedule filed there are no creditors given as holding securities. Petitioners Gandia & Stubbe, of San Juan, and also J. F. Vias Ochoteca, of Madrid, and Juan Baiz, of Havana, are mentioned as having claims for the sale to the bankrupt of their interest in the firm of J. Bouxet & Company.

The sale was by one deed signed by all three vendors. The instrument in question is called a deed of bargain and sale of certain interests in and to a mercantile partnership and other particulars, and, so far as appears, is registered not in the Registry of Property, but in the Mercantile Registry. The paper mentions that on its date, to wit, May 11, 1913, the firm of J. Bouxet & Company is dissolved, and that the old partners, Ochoteca, Baiz, and Gandia & Stubbe, sell to Bouxet the interest severally owned by them in the late firm, for the sum of $11,600 in certain proportions, payable in certain in-

stalments. There is on the face of the instrument no preference between the parties. There are also a number of other unsecured creditors mentioned. These other two vendors of interest in the old firm filed their claims, the one by. Gandia, and the other by Stubbe, apparently members of Gandia & Stubbe, as their agents, and set up no claim of priority. The only thing in the nature of a real right mentioned is a contract of lease of an urban property at Guayama, which is not stated to have been registered. To the paper is annexed a list of creditors sworn to by J. Bouxet. The certificate of registration by José Miguel Marquez, the registrar at Ponce, is dated July 10, 1913, and is in the following words: "The foregoing document has been recorded in view of the deed of ratification number 44, dated May 12th, 1913, executed in San Juan before the notary Mr. Coll, in the Mercantile Registry at folio 111 of volume 23 of Partnerships, sheet number 908 duplicate, seventh inscription." The lease does not seem to enter into the bankruptcy assets, as it is not scheduled, nor are any real rights scheduled. The principal assets mentioned are some $8,000 stock and $7,300 of book accounts.

The claims of Gandia & Stubbe as originally filed, January 20, 1914, made no claim of priority, and this was added afterwards.

1. The sale of the interest in the old firm is claimed to secure a preference for Gandia & Stubbe under § 64d of the bankruptcy act, which allows priorities under the "state law" which applies to Porto Rico. The provision of the Porto Rico Civil Code which is supposed to give this priority is § 1825, which, after many other priorities, mentions "(4) indebtedness which without a special privilege appears (a) in a public in-

strument." It seems that there is no other priority claimed in the case, even by Ochoteca and Baiz, and that the assets of the bankrupt estate are less than the claim of Gandia & Stubbe. So that, if they are entitled to priority because their claim was in a public deed and recorded, they will receive all the assets, and no other creditor, not even the covendors, whom they represent, will receive anything.

2. It is not to be presumed that the agents of Ochoteca and Baiz, more particularly if they are members of the firm of Gandia & Stubbe, who claim a priority, intended to put their principals in any worse position than themselves. If any priority should be allowed to Gandia & Stubbe, opportunity will be allowed to Ochoteca and Baiz by some appropriate notice to amend their claim so as to secure the same priority, if they so desire. A court of bankruptcy, carrying out the principles of equity, could not permit agents to take advantage of their own wrong, nor will the court in this case assume that there is any such intention.

3. The Civil Code and the mortgage law are two of the fixed institutions of Porto Rico which come up often for consideration. The case at bar, however, comes primarily under the Code of Commerce, some of whose provisions have been abolished by other laws on the same subject. The Code of Commerce governs all partnerships and commercial dealings (art. 325). It is an elaborate system as to all elements of such business, and among others a system of bankruptcy law (arts. 870–941) designed to fix the preference of creditors, as in articles 913 and 914, and for distribution of all property of the bankrupt. Article 914 provides that preferred creditors with real rights shall be paid according to the preferences in the mortgage

law. There is no real right among the assets so far as appears; so the mortgage law need not be considered. There is, however, a serious question as to how far § 1825 of the Civil Code may apply.

4. It has been held that state insolvency laws are not repealed by a Federal bankruptcy act. The state law is suspended and revives without further legislation upon the repeal of the bankruptcy act. Butler v. Goreley, 146 U. S. 303, 36 L. ed. 981, 13 Sup. Ct. Rep. 84. Under this principle, whatever effect the provision above quoted from § 1825 of the Civil Code may have is in connection with the local insolvency law, or really what was known and treated as the bankruptcy law of Spain and her colonies. If it is to be construed as giving a preference to a claim on account of bankruptcy, it must be held to be a part of a local insolvency law, which is suspended by the Federal bankruptcy act.

5. What law, therefore, governs this transaction? The Code of Commerce, so far as relates to bankruptcy, is suspended. Does this fact put in force, as to this transaction, the Civil Code? An analogy is suggested in the Civil Code provisions, §§ 1803 and 1804, as to damages from negligent acts. This is the general law, and out of it the legislature has for public reasons carved the subject of employers' liability for negligence. Wherever the employers' liability act is in force, it may be that the provisions of §§ 1803 and 1804 are not in force; but certainly if the employers' liability act should be repealed, there would be no question that §§ 1803 and 1804 cover this and all other cases of negligence. Would the same rule apply to the Civil Code and to the Code of Commerce, so that when the Code of Commerce is suspended by operation of the Federal bank-

ruptcy act, the Civil Code comes into force? If so, § 1825 of the Civil Code will apply. The Code of Commerce, art. 50, expressly provides that what is not covered by that Code is governed by the common law (or Civil Code).

Section 1825 gives a priority to a transaction which is entered into in a public document, which means that it is entered into before a notary, and filed with the archives of the notary's office. These archives are open to public inspection, and the theory is that the public is put on notice. This theory is reinforced by the practice of filing from time to time with the supreme court a copy of the index of notarial acts, and in this case there was, registration in the Mercantile Registry. In this way, in point of fact, a person is able to find out what has been done by the parties in question. Practically there may be difficulties, but this is the law, and any change of it would be for the legislature, and not for the courts. It is true that laws may transgress some fundamental principles, such as the Constitution, and in such case the court could not enforce them; but it cannot be said that giving a public act a priority is liable to such objection.

6. The title of the Civil Code, from which § 1825 is taken, however, does not govern commercial dealings. The Code of Commerce expressly took such regulations out of the Civil Code, and so far as the legislation of Porto Rico is concerned the Code of Commerce is in force. Section 1825 under the Porto Rico legislation governs entirely different transactions, and the effect of the bankruptcy act is not to validate a section of the Civil Code which would not otherwise apply. The bankruptcy act prevents the application of inconsistent laws, but it does not re-enact or revalidate any which did not apply before its own enactment. The analogy of the negligence law is not

apposite. There the same legislature passed a general law and then an exception, and then, *ex hypothesi,* repeals the exception. Here, however, the legislature has enacted two Codes, and so far as it is concerned these Codes cover different subjects. There can be no presumption that, when part of the Code of Commerce is made inapplicable by the Federal bankruptcy act, the local legislature would have the Civil Code apply. It is rather as if there was no legislation on the subject. The Code of Commerce is a complete Code covering certain subjects, and when enacted is to be held as an absolute repeal of everything else on that subject. When any part of it is suspended, the result simply is that there is no local legislation covering the subject in question.

It follows, therefore, that the action of the referee is sustained and the review prayed for is denied.

It is so ordered.