## UNITED HAY COMPANY ET AL. V. H. H. FORD.

No. 6225.   Decided November 28, 1934.
(76 S. W., 2d Series, 480.)

*Franklin & Blankenbecker, Baker, Botts, Andrews & Wharton, W. H. Walne,* and *S. H. German,* all of Houston, for plaintiffs in error.

An agreement is not invalid as between the parties where the money has actually been paid to the claimant, where no lien is asserted and where no effort is made to come between the claimant and the government.   Bailey v. United States, 109 U. S., 432; Spofford v. Kirk, 97 U. S., 484; McGowan v. Parish, 237 U. S., 285.

Section 3477, United States Code, Title 31, cannot be interposed as a bar to a recovery by assignee after the money has been paid to claimant.   Lay v. Lay, 248 U. S., 24; Price v. Forrest, 173 U. S., 410; Wright v. Tebbitts, 91 U. S., 252; Clemens v. Parry, 51 S. W. (2d) 267.

*Rodman S. Cosby, T. H. Stone, Chas. W. Bell,* and *Bryan Suhr, Bering & Bell,* all of Houston, for defendant in error.

The very language of the contract makes it clear as a matter of law that it constitutes an equitable assignment to the United

Hay Company of portions of moneys to be received by Ford. Norris v. Davis, 292 S. W., 574; 5 Texas Jur., 4; 5 C. J., 836; Harris County v. Campbell, 68 Texas, 22.

Section 3477 strikes down and makes invalid all attempted assignments, whether the government is involved in the controversy or whether the controversy is merely between the assignor and assignee. Nutt v. Knutt, 200 U. S., 12; Calhoun v. Massie, 253 U. S., 170; Kingan & Co. v. United States, 44 Fed. (2d) 447.

MR. JUDGE RYAN delivered the opinion of Commission of Appeals, Section B.

The Honorable Court of Civil Appeals for the First Supreme Judicial District has certified the following statement and questions:

"At a time prior to November 17 of 1925, the appellee, H. H. Ford, individually, and the appellant United Hay Company, a corporation, of which W. L. Edmundson, H. L. Roberts, T. C. Edwards, and appellee H. H. Ford were all the stockholders, were severally engaged in the hay business in the area here involved, Ford individually being the owner of hay-land leases, hence being a producer as well as marketer thereof, while the corporation was only a handler of hay or engaged in the buying and selling thereof; while the parties were so engaged the foot-and-mouth disease became prevalent among stock in that section of South Texas where they were operating, that is, among others, in Harris, Brazoria, and Galveston counties, whereupon both the State of Texas and the United States Government, in an effort to control the disease, severally directed quarantines against the curing, cutting and marketing of hay, operative in certain specified areas of those counties; in addition to conducting his own business as an individual, H. H. Ford was also general manager of the corporation, of which he was one of the four sole stockholders; the quarantines thus established in the area affected became a matter of much mutual concern to both the appellee individually and the corporation, since their several activities were thus closely allied and correlated; the effect of these two quarantines was to damage the business and interests of both parties, especially those of appellee Ford, to the extent that up to the date mentioned, that is, November 17 of 1925, he had incurred a total expense in his efforts to prevent the destruction of his hay-leases of $7,308.96, inclusive of $1,260.00 outlay on an injunction suit against the quarantine he had instituted in Brazoria County; thereupon these parties, sustaining the relations to each other already outlined, in furtherance of

their mutual interests, and in the effort to enable the appellee to get back whatever expenses and losses he had and would sustain as a result of the two quarantines referred to, entered into the following contract:

" 'Houston, Texas, Nov. 17, 1925.

" 'The profit the United Hay Company has and will make to be used as far as necessary to pay the actual expenses incurred by H. H. Ford in his private business of the hay lands he leased and the hay he purchased less the profit he has and will make thereon * * * Also, the Company to pay out of said profits the actual expenses incurred by H. H. Ford in his injunction suit in connection with the Foot and Mouth Disease Quarantine. Out of the First Federal and/or State money received by H. H. Ford directly or indirectly, and from any source received, and for any nature paid, the Company is to be fully reimbursed by money so received by H. H. Ford, but money so received that would be above the amount required to fully reimburse the Company to belong to H. H. Ford up to $3,000.00, and any and all remainder of the money so received by H. H. Ford to belong to the Company. The Company not to be liable above the profits it makes.

" 'Signed in Quadruplicate this the 17th day of November, 1925.

" 'W. L. Edmundson,
" 'Thos. C. Edwards,
" 'H. L. Roberts,
" 'H. H. Ford.'

"While signed with their individual names, this instrument, as indicated, evidenced the undertaking of the corporation on the one side and of the appellee as an individual on the other; in pursuance of it as such, the appellee, in his dual capacities as general manager for the corporation and for himself individually, within 4½ months after its date, in several smaller checks as its funds came in, completely reimbursed himself out of the corporation's moneys on hand, and with the full knowledge, acquiescence, and consent of all parties concerned, for the full amount of the $7,308.96 he had so been out for expenses in connection with his leases and the injunction suit, as provided in the quoted contract; in the meantime, shortly after the date of this agreement, he had begun active prosecution of his claim against the State of Texas for his damages growing out of the quarantine, and about October 1, 1926, succeeded in collecting from the State of Texas the sum of $66,188.00; immediately thereafter, in further pursuance of the agreement of November

17, 1925, the parties met and out of this sum of $66,188.00 collected from the state there was refunded to the United Hay Company the sum of $7,308.96, which had been paid to and received by the appellee on the date before set out; there was next paid to him the sum of $3,000.00, as in the contract provided, and after deducting certain sums for commissions, expenses, etc., the balance was divided equally between the appellants Edmundson, Roberts, and Edwards, and the appellee Ford, each receiving the sum of $9,344.04; thus the agreement of November 17, 1925, was to this extent, and in so far as the claim against the State of Texas was concerned, fully and completely performed, to the mutual satisfaction at that time of all parties concerned.

"Likewise, beginning about the date of the agreement and continuing for some time thereafter, the appellee individually and through an agent, prosecuted his claim against the Federal Government for the additional damages sustained by him in connection with his leases and hay lands, and, as a result of the passage by Congress of an act entitled 'An Act for the Relief of Hay Growers in Brazoria, Galveston and Harris Counties, Texas,' succeeded in collecting from the Federal Government a sum equal to the sum collected from the State of Texas, to wit, $66,188.00, which sum was paid to him on May 21 of 1929.

"The appellee then refused either to account to the corporation, or any of its other stockholders than himself, for this $66,188.00 thus collected by him from the Federal Government, or to pay any of them any part thereof, claiming and appropriating the whole of it to himself individually;

"thereupon, the Hay Company corporation and the other three stockholders thereof filed this suit against the appellee, declaring on the copied contract, and seeking a recovery for the benefit of the Hay Company of this whole $66,188.00, subject, however, to the duty resting upon it to pay the actual, reasonable, and necessary expenses incident to the collection thereof, alleging that the money constituted the property of the corporation, or of its four before-named stockholders jointly, and that the appellee received and thereafter held it as trustee for them.

"In answer the appellee, among other defenses, declared that appellants had merely sued upon 'a contract having reference to nothing, save and except the purchase and sale of a claim against the United States owned by the appellee, before its allowance,' which was obnoxious to Article 3477, Revised Statutes of the United States, Title 31, Section 203, U. S.

Annotated Code, and therefore constituted no cause of action against him.

"On the facts stated, we ask:

"Was the contract declared upon, in so far as applicable to the $66,188.00 so collected by the appellee from the United States Government, null and void, hence unenforceable against him in this cause, as being within the purview of the Federal Statute thus invoked?"

OPINION.

It appears from the certificate that Ford conducted his own individual business as well as that of the United Hay Company as general manager, of which he was one of its four sole stockholders. The activities of the parties became closely allied and correllated, with Ford as the controlling and guiding spirit.

The quarantines affected all the parties with their varied interests so closely interwoven under the management of Ford, and the agreement dated November 17, 1925, contemplated the fixing of their proportionate interests or claims after refunding the expenses incurred in collecting the damages sustained because of the quarantines, which damages were treated as a group claim, so far as the recovery was concerned. Thus, Ford was also a producer owning hay land leases, and the first paragraph provided for refunding to him his actual expenses and loss from that branch of the group business. He had instituted certain injunction proceedings, in connection with the quarantines, inuring to the benefit of all, and the second paragraph provided for refunding the expenses thereof. Ad interim, as expended by Ford, the above moneys were to be advanced through the United Hay Company, under which all the parties operated and were interested, and then, as directed in the third paragraph, be refunded out of any appropriated federal or state relief moneys received by Ford, directly or indirectly, after which the next $3,000.00 was to be retained by Ford, and the remainder to the company.

Ford was the trustee charged with the business of collecting such varied funds and dividing them in accordance with said agreement, which was in no sense a sale or assignment of claim, but only a fixing of the respective shares of each, already existing.

That Ford so recognized the agreement is evidenced by his division of the sum received from the State in accordance with the terms thereof.

Ford used money taken from the treasury of the United Hay Company in pursuance of the agreement and refunded

same when collected from the State, in further pursuance thereof, then retained $3,000.00 for himself and divided the remainder among the four sole stockholders (including himself) of the company—all in strict compliance with his own understanding and that of his associates in the group.

█ The government appropriation was in complement of and equal to that of the state—each sovereignty indemnifying to the extent of one half of the claims. We think the proceeds of the collection from the government should take the same course as the collection from the State.

The federal appropriation in question here was authorized by an Act of Congress, approved February 11, 1929 (44 Stat. at Large, pp. 1159, 1160) entitled "An Act for the relief of hay growers in Brazoria, Galveston and Harris Counties, Texas" and authorized the Comptroller General to examine and settle, on the basis of facts and figures to be found and reported by the Secretary of Agriculture, the claims of hay growers in those counties, who were prevented during the year 1925 from harvesting their hay because of quarantine restrictions against the spread of the hoof and mouth disease, provided the allowance made on any such claim shall not exceed the amount paid thereon by the Live Stock Sanitary Commission of Texas, pursuant to an act of the state legislature approved October 6, 1926. The act made an appropriation to pay such claims as may be allowed by the Comptroller General and limited the compensation to be paid to any agent or attorney on account of services rendered in connection with any claim, to 10 per centum thereof.

█ It was under this Act of Congress that Ford handled the matter, made the group claim in his own name and collected the amount of $66,188.00 on May 21, 1929, as a result, but the division thereof was of course to be controlled by the agreement of the parties. The agreement is not obnoxious to Article 3477, Revised Statutes of the United States, Title 31, Section 203, U. S. Annotated Code, which reads as follows:

"Sec. 203. Assignments of claims void. All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share, thereof, except as provided in section 204 of this title, shall be absolutely null and void, unless they are freely made and ex-.

ecuted in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same. The provisions of this section shall not apply to payments for rent of post-office quarters made by postmasters to duly authorized agents of the lessors. R. S. Art. 3477; May 27, 1908, c.206,35 Stat. 411)."

There was an agreed joinder of interests in a common enterprise for the joint account of all—to that extent a partnership relation fixing their respective interests in the fund, when collected, was created among the parties. Freeman v. Huttig Sash and Door Co., 105 Texas, 560; Southern Surety Co. v. Texas Employers' Ins. Ass'n., 2 S. W. (2d) 310, writ of error refused; 32 Tex. Jur., p. 244. A community ownership in the total of all the claims, designated as profits, was the object of the agreement.

We are not considering the relation of the parties to outside persons, but only as among themselves.

Ford was permitted to prosecute the claims of all, in his own name, and was therefore their trustee obligated to account to each in accordance with the interest of each as fixed by the agreement. There was no assignment by Ford, within the prohibition of the Federal Statute. Hobbs v. McLean, 117 U. S., 567.

In Padilla v. Padilla, 11 N. M., 540, 70 Pac., 565, the facts were:—A claim against the United States government instituted by Juan Padilla for the value of certain sheep alleged to have been stolen by Indians, resulted in judgment in his favor, afterwards collected. His sister Victoriana owned a one-half interest in the sheep, to evidence which, he executed written agreement to give her one-half of the claim when paid. The court said that the promise to pay was a purely personal nature by which Padilla agreed to divide with his sister the proceeds of the claim when the money was received by him, and was therefore not in violation of the statutes of the United States as the government had no interest in the distribution of money paid upon claims adjudicated.

The court added, it would be a strange proposition of law, that parties may plead an estoppel of their own procurement and take advantage of their own wrong, at the expense of a trusting other party.

As said in 26 R. C. L., p. 1200, "the simplest transaction out of which a trust will be implied is that of money or other property delivered to a person to be by him paid or delivered over for the benefit of a third person." 65 C. J., p. 213; Allen v. Pollard, 109 Texas, 536. In McKee v. Lamon, 159 U. S., 317, the court held that where a person collected a claim against the government under an agreement to pay others for their services rendered and moneys expended in the prosecution of the claim, a trust arises in favor of the latter which may be enforced by bill in equity, the receipt of the money being a sufficient consideration for its final disposition.

Sec. 3477, Revised Statutes of the United States, has many times been considered, and while assignments of claims before their allowance have been voided (National Bank of Commerce v. Downie, 218 U. S., 345; Nutt v. Knut, 200 U. S., 12), the statute was intended solely for the protection of the government and not the claimant and to prevent frauds upon the treasury (Price v. Forrest, 173 U. S., 410; McGowan v. Parish, 237 U. S., 285; Goodman v. Niblack, 102 U. S., 556; Bailey v. United States, 109 U. S., 432; Freedman's Sav. & Trust Co. v. Shepherd, 127 U. S., 494; Lay v. Lay, 248 U. S., 24, affirming Lay v. Lay, 79 So., 291). The statute is not applicable to transfers by operation of law (Erwin v. United States, 97 U. S., 393; Goodman v. Niblack, 102 U. S., 556; Butler v. Gorelley, 146 U. S., 303; Price v. Forrest, 173 U. S., 410), nor to a partnership contract to furnish supplies to the government or a promise by one partner to pay to another a sum already due him under an agreement, out of money to be received from the government for such supplies (Hobbs v. McLean, 117 U. S., 567), nor to the right of a mortgagee of real estate leased to the government or the pledgee of the funds thereof to recover from the mortgagor or pledgor the amount of funds paid to them by the government (Freedman's Sav. & Trust Co. v. Shepherd, 127 U. S., 494), nor can the government be compelled to pay a second time a claim which it has paid to another under a power of attorney from the claimant (Bailey v. United States, 109 U. S., 432).

Succinctly stated, the claims of all the parties were lumped for collection in the name of Ford and existed not by virtue of the agreement; each grew out and as a result of the quarantines

directed by the state and federal governments, effective against their property as well as against his. Ford conveyed or assigned nothing to the others, he simply recognized their rights in the fund, when collected, to the extent of their claims, which by agreement was to be disposed of as stated therein.

We answer, that the contract declared upon, insofar as applicable to the fund collected from the United States government, was not null and void and is enforcible against said Ford.

Opinion adopted by the Supreme Court November 28, 1934.