Padilla v. Padilla.

[No. 941.   August 28, 1902.]

# VICTORIANA PADILLA, Appellant, v. JUAN PADILLA et al., Appellees.

## SYLLABUS.

Where a brother recovered a judgment in the Court of Claims in his own name, upon an Indian depredation claim for property jointly owned by himself and sister and before judgment was obtained agreed in writing to pay his sister her share of the money when he received the same; and upon his refusal to do so after he received the money, the sister brought suit for the amount due her: *Held,* that as between the parties to the agreement, the plaintiff had a right of recovery for her share of the proceeds of the judgment upon the same being paid to defendant, and no moral turpitude nor conspiracy to defraud the government being shown as to her, she was neither barred nor estopped of her remedy.

Appeal from the district court of Bernalillo county, before J. W. CRUMPACKER, Associate Justice. Reversed and remanded.

FERGUSSON & GILLETT for appellant.

Before appellant could be estopped as against the defendants, she must have misled them to their injury.

> Brant v. Virginia Coal and Iron Company et al., 93 U. S. 326, 335, and 336, and citations; Hobbs v. McLean, 117 U. S.—; Cushing v. Laird, 107 U. S. 69; Leach v. California Safe Deposit Co. et al., 63 Pac. 786.

LOWELL LOUGHARY for appellees.

The appellant's attempt to recover in her brother's name by and through a secret agreement was a fraud under the Act of March 3, 1891.

> Revised Statutes (U. S.), sec. 1086; Revised Statutes (U. S.), sec. 5438.

The appellant's testimony in the Court of Claims in support of the petition of Juan Padilla, made her a party to the fraud under an express statute of the United States.

Revised Statutes (U. S.), sec. 5440.

The secret agreement of the parties was a combination to defraud the government and cannot be enforced.

Hoffman v. McMullen, 83 Fed. 372; Tracy v. Talmage, 14 N. Y. 162; Trist v. Child, 21 Wall. 441; Tool Co. v. Norris, 2 Wall. 45; Hagan v. Wellington, 52 Pac. 909; Savage v. Douglas, 59 Cal. 91, 94; Russell v. De Grand, 15 Mass. 35; Gibbs v. Cass Co., 130 U. S. 396; White v. Bank, 22 Pick. (Mass.) 186-7; Crozier v. Acer, 7 Paige (N. Y. Ch.) 141; Bolt v. Rogers, 3 Paige (N. Y. Ch.) 155; Bowman v. Phillips, 13 Am. St. 296; McMullen v. Hoffman, 174 U. S. 639; McClusland v. Ralston, 12 Nev. 195 (206-209).

The undertaking of the parties regarding the claim was a fraud under the Act of March 3, 1891, and in violation of law and of express statutes, hence void.

Bank of the United States v. Owens, 2 Pet. 527; Youngblood v. Birmingham, 36 Am. St. 245, 250; Brooks v. Cooper, 35 Am. St. 793 (50 N. J. Eq., where the subject is fully considered) ; Mont v. Wait, 7 Johns. (N. Y.) 434, 440, 441; Gulick v. Ward, 18 Am. Dec. 389, 393, 394 and note.

The undertaking of the parties regarding the claim contemplated false testimony and perjury, hence cannot be enforced.

Greenwood on Public Policy, page 441; State v. Johnson, Admr., 52 Ind. 206; Story on Contracts, sec. 700; Haggerty v. St. Louis Ice Co., 65 Am. St. Rep. 647; 143 Mo. 238.

Neither courts of equity nor courts of law will grant relief in such cases.

Brooks v. Cooper, 35 Am. St. 806, 50 N. J. Eq. 761.

And the defendant may invoke the rule even though he be in *pari delicto* with plaintiff.

Kirkpatrick v. Clark, 132 Ill. 342; Cranson v. Goss, 107 Mass. 439.

And it matters not by which of the parties the fraud is disclosed to the court.

Agee v. Duncan, 50 Cal. 325-327; Bowman v. Godegal, 92 Am. Dec. 537, 538.

The courts will not inquire into the relative guilt of the parties.

Lowell v. Railroad, 23 Pick. (Mass.) 24; Tracy v. Talmage, 14 N. Y. 186; Church v. Proctor, 13 Cr. Ct. App. 426-430.

An admission made with a view of gaining some advantage to the party making it, concludes the party from denying the same.

1 Greenleaf, sec. 27.

And opposing evidence is prohibited from motives of public policy.

1 Greenleaf Ev., sec. 15; see also, 1 Greenleaf, sec. 180; Bigelow on Estoppel, pages 127 and 128.

### STATEMENT OF THE CASE.

Defendant Juan Padilla, eight years before the commencement of this suit, brought suit in the Court of Claims against the United States and the Apache Indians, to recover the value of six thousand sheep, which it was alleged the Indians had stolen, and of which he was the owner. On the seventeenth day of December, 1900, Padilla obtained judgment upon his claim for the sum of five thousand three hundred and seventy dollars. Eight hundred and five dollars attorney's fees were deducted therefrom, and the balance, four thousand five hundred and sixty-five dollars, was

paid to defendant Juan Padilla, on the sixth day of May, 1901, of which amount he paid Charles W. Lewis one-half, or two thousand two hundred and eighty-two and fifty one-hundredths dollars.

In this action the plaintiff alleges the above facts, and, in addition, that said sheep were owned jointly by herself and her brother, that she was entitled to one-half of the amount paid to her brother, and that she had demanded of the defendants the sum two thousand two hundred and eighty-two and fifty one-hundredths dollars, which was refused. She also claims interest at six per cent from the date the money was received by her brother.

Defendant Charles W. Lewis died before answer, and George E. Lewis, as administrator and legal representative, was made a defendant. Separate answers were filed, and also an amended answer. By these answers the plaintiff's case is admitted, as to the suit of Padilla, recovery of the claim for the amount alleged, receipt of the money by Padilla, and that one-half of the same was paid to Charles W. Lewis; but the answers deny that the plaintiff ever had any interest in the sheep, alleging that for ten years prior to the time the depredation was committed, defendant Juan Padilla, was sole owner and in undisputed possession of the same adverse to the plaintiff; that during eight years the claim of defendant Padilla was pending in the Court of Claims, the plaintiff never claimed any interest in said claim of Padilla, nor in the proceeds thereof, nor until just prior to the commencement of suit by her, but on the contrary recognized Juan Padilla's right and interest as sole owner, and that the government and both of the defendants relied upon her representation to this effect.

Issue being joined, the cause came on for trial October 30, 1901, before the court, jury having been waived. The plaintiff was called as a witness, and, in connection

with her testimony, produced the following paper which she said had been given her by her brother Juan Padilla:

"Albuquerque, N. M., October 6, 1900.

"Be it known by these presents that I, Juan Padilla, of Tome, New Mexico, have presented a claim of six thousand ewes, taken by the Indians, in my name and in the name of my sister, Victoriana Padilla, to whom said ewes belonged, also to myself, and on account of the said number of ewes having been taken by the Indians I hereby agree to give her the one-half of the said claim when the same shall be paid and in conformity with the above. I execute this document in the presence of the witnesses and so forth, Enrique Sosa and J. M. Griffen, in Albuquerque on the sixth day of October, 1900."

This instrument was duly acknowledged before a notary public, Modesto C. Ortiz.

Upon cross-examination the witness testified that she owned a half-interest in the sheep, and always claimed it. She then was asked the following question: "Q. Now in your testimony in that claim and while you were under oath, you stated that you had no interest in that claim, did you not?" Her answer: "A. Yes, sir, because Don Carlos said it was just the same, and he said that he was mayordomo of his and it was just the same, and when he got the claim he says that your brother will give the half. I have witnesses that perhaps knew that I had one-half interest with my brother."

While plaintiff was giving her testimony as the first witness in the case, and before the conclusion of her testimony, the court, of its own motion, announced that the cause would be dismissed, and thereafter, upon the same day made findings of fact to the effect, that while the Indian depredation of Juan Padilla was pending in the Court of Claims, the plaintiff voluntarily appearing in her own behalf, testified in support of the claim of Juan Padilla, that she "claimed no interest or property in said Indian depredation claim," and that the Court of Claims, relying upon her testimony, gave judgment in

favor of Juan Padilla as sole owner, etc.; and as a con-
clusion of law upon such facts, the court found, "that
the plaintiff cannot now maintain this action upon the
matters and things set forth in the complaint herein,"
and judgment was rendered dismissing the cause at the
costs of the plaintiff and her bondsmen.

Motion for new trial was filed, overruled, and ex-
ceptions were properly saved to the overruling of the
motion of new trial and judgment of the court. Appeal
was granted, and the cause is now in this court for re-
view.

### OPINION OF THE COURT.

McFIE, J.—From the language of the judgment of
the court below, it is evident that the court was of opin-
ion that, by testifying in behalf of her brother, that she
had no interest in the claim her brother had made
against the government and the Indians, the plaintiff
had closed the doors of the courts of justice against her-
self, and that she was without a remedy in the courts,
notwithstanding all the proof offered, as well as the ad-
mission of her brother, in writing, showed that she had
owned one-half of the sheep and her brother had prom-
ised her one-half of the proceeds when the same was paid
him. This position does violence to the principle of jus-
tice, and the judgment is manifestly wrong and erron-
eous.

The doctrine applied by the court was either that
which relates to contracts and transactions *malum in se*
and *malum prohibitum,* or the doctrine of estoppel, and
in our opinion they are both equally inapplicable to the
case presented by this record.

Concerning contracts and transactions *malum in se*
and *prohibitum* or such as involve moral turpitude,
all of the parties are considered equally guilty, and the
courts will not aid either party to such contract or trans-
action. Counsel for appellee has referred the court to

numerous authorities sustaining this doctrine, and a reference to a few of them will show to what character of transaction or contract the doctrine is to be applied. In Tool Co. v. Norris, 2 Wall. 45, was a case in which there was an agreement in the nature of a conspiracy by which Wellington entered into an agreement with one Kress to defraud the government, and then entered into an agreement to sell the evidence of such fraudulent conspiracy. It was held that Wellington could not be permitted to profit by such conspiracy agreement, and the court declared the contracts unconscionable and void as against public policy.

The case of Trist v. Child, 21 Wall. 441, was a case where contracts for the suppression of evidence and compounding of felonies were declared to be void as against public policy.

In the case of Gibbs v. Baltimore Gas Co., 130 U. S. 396, the plaintiff brought about an agreement between two competing gas companies, by which they would cease to be competitors, and would co-operate to prevent other companies doing business in Baltimore. The court declared in that case, that the laws were so framed as to encourage competition, and agreements to deprive the public of such benefits, were against public policy and void, and refused to aid Gibbs, who negotiated the unlawful contracts, when he sought to recover for his services.

The case of McMullen v. Hoffman, 174 U. S. 639, was a case where parties entered into agreement to put in separate bids, as if the same were bona fide, but they also secretly agreed that if either obtained the contract they would pool their interests share and share alike. The court refused to enforce this agreement, because the contract tended to defeat competition and because the parties had committed fraud in submitting separate bids apparently bona fide, while a secret agreement existed providing for combining their interests.

From these cases which apply the doctrine, it will

Padilla v. Padilla.

be observed that the parties were not only willing but active participants, with full knowledge of the fraudulent and unlawful character of the contract or transaction.

But a very different principle of law applies in cases like the one now before this court, where an innocent victim is endeavoring to secure her rights from those upon whom she has relied, and who, by deceit and fraud, are seeking to deprive her of them.

In the case of Thomas v. City of Richmond, 12 Wall. 349, an early case, the doctrine of which has been followed ever since the decision was rendered; in speaking of cases where recovery can be had, although the transaction may have been illegal, mentions the following class: "Where the one party is the principal offender and the other only criminal from a constrained acquiescence in such illegal conduct, in such cases there is no *parity of delictum* at all between the parties, and the party so protected by the law, or so acting under compulsion, may, at any time, resort to the law for his remedy, though the illegal act be completed."

Recurring to the record, we find the defendants' position to be, that Victoriana Padilla, cannot maintain an action against them, because she testified falsely that she had no interest in the Indian depredation claim filed by her brother. It is difficult to see how this testimony was false if the answer of her brother is true as he alleges that she never owned any interest in the sheep for the loss of which the claim was made. The defendants, however abandoned their answer that the defendant Padilla was the sole owner of the sheep, apparently in order that they might insist that the plaintiff testified falsely in behalf of her brother that she had no interest in the claim of her brother against the United States. So far as the record shows, Victoriana Padilla did not know that her brother had filed a claim against the government in his own name for the sheep owned by them jointly for some eight years after the claim had been

filed, as the document introduced by her in evidence, appears to be the result of her discovery of her brother's action, and a demand on her part for assurance from him that she would not be robbed of her interest. This document was evidently executed for the purpose of giving her such assurance, that she would not interfere with or deprive Padilla of his right of recovery against the government. But it will be observed, that this document is very carefully drawn, and while it admits and informs the plaintiff that the claim was filed by him for sheep owned by them jointly, it does not promise to give her any interest in the sheep or the claim, but the promise, is, to give her one-half of the proceeds after the same are paid to him by the government. Therefore, under the terms of that instrument, she had no right to claim an interest in the sheep, but only one-half of the proceeds in the event he recovered payment for the loss of them; and if she so believed, she did not knowingly swear falsely, or intentionally join in a fraudulent or illegal transaction.

There is no evidence of any contract by which she agreed to testify on behalf of her brother as to that claim. So far as the record shows, there was no question made by the government as to the brother's ownership of the sheep, so as to require her testimony as to whether she had any interest in the claim or not, nor does there seem to have been any controversy as to the number of sheep stolen. It is reasonable to conclude, therefore, that Mr. Lewis, who seemed to be the agent or attorney of Juan Padilla, placed Victoriana Padilla upon the witness stand and advised her to testify that she had no interest in the claim, that a foundation might be laid for depriving her of any share of the proceeds when the same should be collected from the government.

This appears to be sustained, by what occurred at the trial in the court below. The plaintiff was asked if she did not testify in behalf of her brother in the Court of Claims that she had no interest in the Indian

depredation claim of her brother. . She answered : "Yes, sir, because Don Carlos said, it was just the same, and he said that he was a mayordomo of his and it was just the same, and when he got the claim he says that your brother will give you the half." From this occurrence it is evident that the witness relied upon the advice of Charles W. Lewis in testifying as she did and she gives it as the reason why she so testified. She appears to have been used by both of the defendants for their own benefit, and for the purpose of taking such advantage of her ignorance of the effect of her testimony as to deprive her of any rights she might have to one-half of the proceeds of the claim in the event her brother should receive the same. The further fact appearing from the record, that Charles W. Lewis after the money had been received by Juan Padilla, received from the brother the sum of two thousand eighty-two dollars and 50-100, which he knew the brother had obligated himself in writing to pay to the sister, indicates clearly the purpose of Lewis and Juan Padilla not only to deprive the plaintiff of any part of the proceeds of her property, but cause her to take such action as would deprive her of a remedy either against the government or themselves.

That the government was defrauded does not appear from this record, as it does not appear that the government paid for any more sheep than were stolen by the Indians, and the guilty Indians are required to reimburse the United States for such losses; and, while it is true that the law contemplates that the claim shall be filed in the name of the real owners, that is a matter of procedure, which, if not raised by the government itself, does not, under the circumstances, constitute a transaction so tainted with fraud and illegality, that the courts would refuse to entertain a proceeding to enforce her legal rights, as between the parties.

The plaintiff being a woman, and not supposed to be familiar with the rules of law, even if her testimony was technically untrue, and the government might pro-

ceed against her criminally, no question having been raised by the government, it does not appear how the defendants, whom the record shows to be responsible for fraud, if such intervened, should profit at the expense of their innocent victim, and thus take advantage of their own wrong.

The circumstances of this case, in our opinion, bring the case clearly within the principle laid down by the court in the case of Thomas v. City of Richmond, supra. The case of Hobbs v. McLean et al., 117 U. S. 567, seems to be precisely in point, and conclusive of this case. In that case one Peck put in a bid for a contract to furnish the government with six thousand cords of wood and eight hundred tons of hay, and believing that he would be awarded the contract he formed a partnership with McLean and Harmon, for the purpose of carrying out the contract he expected to make. Peck was awarded the contract. The partnership was formed, they delivered the wood, which, at the contract price amounted to $51,900, but were prevented from delivering the hay, as they claimed, by the officers of the United States. The government refused to pay the amount claimed, claiming damages for failure to deliver the hay, but paid $10,919.37. Peck thereupon sued the government in his own name for $55,003.63. The Court of Claims gave judgment in favor of Peck in the sum of $43,113.63. While the claim was pending, Peck gave Harmon the following evidence of Harmon's interest in the claim:

"Fort Abraham Lincoln, July 20, 1887.

"For value received, I promise to pay William Harmon, or order, $23,000, out of moneys I may hereafter receive on account of my claim against the United States government for contract for wood, at Tom river, on the Yellowstone river.

(Signed.)          "C. K. PECK."

Peck also executed and delivered to McLean, on the

same day, a similar paper, for the sum of $17,000. Harmon and McLean both testified in behalf of Peck in the proceeding for the enforcement of his claim, and testified that they had no interest, direct or indirect, in the claim of Peck, except that each of them had one of the notes made by Peck. The claim of Peck was allowed, as above stated, notwithstanding the fact that it was shown that these parties had an interest in the proceeds of the claim against the government, and had in their possession documents in writing by which Peck admitted the interest of both Harmon and McLean in the proceeds to be received from the government, very similar, indeed, to the paper held by the plaintiff in this case. Peck became a bankrupt, and Hobbs was appointed assignee. Peck died. Hobbs became administrator of his estate, and McLean and Harmon, fearing that Hobbs would distribute the funds derived from said claim among the creditors of Peck, filed suit against Hobbs for the amount due them as surviving partners of Peck. McLean and Harmon recovered in the court below, and the judgment was affirmed upon appeal by the Supreme Court of the United States. The Supreme Court of the United States, in deciding that case, considered and overruled the fourth assignment of error, which was as follows: "That the testimony of complainants in the Court of Claims that they had no interest in Peck's contract was conclusive." Further along in the opinion, the court says: "The next ground against the decree of the circuit court is, that the court did not hold the plaintiffs estopped from asserting title to the fund in controversy, in the fact that they each testified in the suit of Peck against the United States, in which the fund was recovered, that he had no interest, direct or indirect, in the claim made by Peck except that he had one of the notes of the memorandum made by Peck, a copy of one of which has already been given. It must be conceded that the testimony was evasive and disingenuous, but it was not false. But admitting that the testimony was

untrue, it is difficult to see how an estoppel is raised which the defendants can set up against a recovery in this case by the plaintiff. An equitable estoppel is raised when there is some disposition in the conduct or declaration of the party to be estopped, or such gross negligence on his part, as to amount to constructive fraud, by which another has been misled to his injury. If any estoppel could be set up in this case by reason of the testimony of the plaintiffs, it would be one in favor of the United States, who alone could have been injured by that testimony. There is no proof in the record that the defendant was misled by the testimony of the plaintiffs, or that he did not know the exact truth when he took the proceeds referred to. In no point of view, therefore, can the defendant assert that the plaintiffs are estopped to claim the fund in controversy. It is clear the estoppel could not be set up by the defendant, for the evidence was given on his side of the controversy, and he is now in possession of and claims the funds which that testimony aided Peck, whose assignee he is, to recover. There was, therefore, no injury to defendants, and no estoppel which he could set up against the plaintiff."

This case seems to determine, adversely to the defendants, all of the points relied upon by them to sustain the judgment of the court below. The court took jurisdiction of the case, and distributed the proceeds, notwithstanding the fact that at the time the claim by Peck was litigated against the government, Harmon and McLean were jointly interested in the proceeds, and the same was proven in the case; and also as to an estoppel, if such is relied upon.

In the case of Burck v. Taylor, 152 U. S. 634, the Supreme Court of the United States defines the meaning of section 3737 of the Revised Statutes, wherein it is declared that "no contract or order or any interest therein shall be transferred by the party to whom such contract or order is given, to any other party." This

is the section of the statute which it was claimed was violated by Peck when he gave McLean and Harmon an interest in his contract with the government. The court in construing the meaning of that statute, says: ."Interpreting the articles in the light of the statute, as it is the duty of the court to do, they were not intended to transfer, and did not transfer, to the plaintiffs any claim or demand, legal or equitable, against the United States, or any right to exact payment from the government by suit or otherwise. They may be fairly construed to be the personal contract of Peck."

So, in the case at bar, the written instrument given Victoriana Padilla by Juan Padilla, her brother, did not pretent to transfer to her any right or claim against the government by which she could maintain any suit against the United States; but it was a promise of a purely personal nature, by which he agreed to divide with her the proceeds of his claim against the government when the money should be received by him, and was therefore not in violation of the statutes of the United States, as the government has no interest in the distribution of money paid upon claims adjudicated. Brooks v. Martin, 2 Wall. 70; McBlair v. Gibbs et al., 17 How. 232; Armstrong v. American Exc. Bank, 133 U. S. 433; Armstrong v. Toler, 11 Wheat. 258; Planters Bank v. Union Bank, 16 Wall. 433-483.

The money was received by Padilla and Lewis, prior to the commencement of this suit, and was recoverable by the plaintiff as money had and received, to the extent of her interest, as disclosed by the proof.

The opinion of the court in Hobbs v. McLean et al., supra, sets at rest any contention urged in support of an estoppel in this action. Indeed, it would be a strange proposition of law, that parties were permitted to plead an estoppel of their own procurement and manufacture, and such would be the case if the doctrine of estoppel was applied in this case.

Upon the trial in the court below, there was but

one witness placed upon the stand, and that witness was the plaintiff herself. All of her testimony was in support of her own cause of action. The defendants alleged in their answer that the defendant Juan Padilla was the sole owner of the sheep for which the depredation claim was made, and that Victoriana Padilla never had or claimed any interest in the sheep of the depredation claim until just prior to the commencement of this suit; but there was no testimony offered by the defendant in support of this allegation of their answers. All of the proof introduced upon the trial was to the contrary, and it was error for the court below to refuse to hear the testimony upon the issue thus tendered by the answer, unless the plaintiff, on the facts shown, was wholly without remedy, for the reason above stated. Having arrived at the conclusion, upon the facts shown, that the plaintiff was not without remedy, it follows that the court erred in disposing of the case and rendering judgment of dismissal prior to the hearing of testimony upon the other issues tendered by the answers.

The judgment of the court below will be reversed, and the cause remanded to the district court of the Second judicial district, with instructions to grant a new trial and proceed in accordance with the views herein expressed.

Mills, C. J., Parker, Baker and McMillan, JJ., concur.