Anson E. York et al., Respondents, v. William W. Conde
                    et al., Appellants.

1. Construction of Federal Statute by Federal Court — Effect
on State Court. When a question of statutory construction of an act of
Congress which has been determined by the Supreme Court of the United
States arises in a state court, the state court should follow the construc-
tion of the federal court, on the principle of comity, although the case in
which the question arises is one where the ultimate jurisdiction is vested
in the state court.

2. Claims against United States — Assignment — U. S. Rev. Stat.
§ 3477. In view of the decisions of the Supreme Court of the United
States on the subject, the just construction of the provision of section
3477 of the Revised Statutes of the United States, which declares "abso-
lutely null and void" all transfers and assignments of any claim against
the United States made before the allowance of the claim, is that such a
transfer or assignment, made in the legitimate and usual course of busi-
ness, in good faith, to secure an honest debt, while it may be disregarded
by the government, is good as between the parties so far as to enable the
transferee, after the government has paid over the money to the claimant,
to enforce, as against him or those who take with notice, the interest or
lien given by the assignment.

Mem. of decision below, 71 Hun, 614.

(Argued October 30, 1895; decided November 26, 1895.)

Appeal from judgment of the General Term of the Supreme
Court in the fourth judicial department, entered upon an order
made September 12, 1893, which affirmed a judgment in
favor of plaintiffs entered upon a verdict.

The nature of the action and the facts, so far as material,
are stated in the opinion.

Elon R. Brown for appellants.    Section 3477 of the
Revised Statutes of the United States prohibits and renders
void the assignment from Witherby & Gaffney to York &
Starkweather of an interest in the claim of Witherby & Gaff-
ney against the United States for the construction of officers'
quarters at Madison Barracks, Sackets Harbor, N. Y.  (U. S.
R. S. § 3477; U. S. v. Gillis, 95 U. S. 407.)  This statute
covers every voluntary assignment or transfer of a claim

against the United States, and may be invoked by private parties as well as by the government to defeat such an assignment or transfer. (*Spofford* v. *Kirk*, 97 U. S. 484; *McKnight* v. *U. S.*, 98 U. S. 179; *S. P. & D. R. R. Co.* v. *U. S.*, 112 U. S. 733; *Hager* v. *Swayne*, 149 U. S. 242; *Baker* v. *Sweetzer*, 15 Minn. 427; *Emmons* v. *U. S.*, 42 Fed. Rep. 26; *Trist* v. *Child*, 21 Wall. 441, 447; *Newell* v. *West*, 21 N. E. Rep. 954–956; *McKee* v. *Cochrane*, 17 Wash. L. Rep. 219; *Woods* v. *Dickinson*, 18 Wash. L. Rep. 5; *Ely* v. *U. S.*, 19 Ct. Cls. Rep. 658, 664; *Johnston* v. *U. S.*, 13 Ct. Cls. Rep. 217; *Belt* v. *U. S.*, 15 Ct. Cls. Rep. 92; *Forehand* v. *U. S.*, 23 Ct. Cls. Rep. 477; *Lopez* v. *U. S.*, 24 Ct. Cls. Rep. 84; *Howes* v. *U. S.*, 24 Ct. Cls. Rep. 170; *Harris* v. *U. S.*, 27 Ct. Cls. Rep. 177; *Hitchcock* v. *U. S.*, 27 Ct. Cls. Rep. 185.) The statute does not cover assignments in bankruptcy or insolvency, or to heirs or legatees at death, or by other involuntary devolution. (*Erwin* v. *U. S.*, 97 U. S. 392; *Goodman* v. *Niblack*, 102 U. S. 556; *Bailey* v. *U. S.*, 109 U. S. 432; *B. B. R. R. Co.* v. *U. S.*, 16 Ct. Cls. Rep. 238; *Spofford* v. *Kirk*, 97 U. S. 484; *Hobbs* v. *McLean*, 117 U. S. 567; *F. S. & T. Co.* v. *Shepherd*, 127 U. S. 494; *Butler* v. *Gorely*, 146 U. S., 303; *Redfield* v. *U. S.*, 27 Ct. Cls. Rep. 393; *McKay* v. *U. S.*, 27 Ct. Cls. Rep. 422; *Morgan* v. *U. S.*, 4 Ct. Cls. Rep. 319; *Forest* v. *Price*, 29 Atl. Rep. 215; *Hager* v. *Swayne*, 149 U. S. 242; *Dexter* v. *Meigs*, 21 Atl. Rep. 114; *Stanford* v. *Lockwood*, 24 Hun, 291; *B. N. Bank* v. *Wilson*, 122 N. Y. 478; *Billings* v. *O'Brien*, 45 How. Pr. 392, 402.) The assignment from Witherby & Gaffney to York & Starkweather of a part of the claim against the United States was forbidden by sections 1909 and 1910, Code Civil Procedure. (*U. S.* v. *Robbins*, 9 Pet. 319; *Winchester* v. *Hackley*, 2 Cranch, 342; Pom. Eq. Juris. § 168; *Hager* v. *Swayne*, 149 U. S. 242; *Goodman* v. *Niblack*, 102 U. S. 556.)

*Henry Purcell* for respondents. The main contention of the defendants is that the plaintiffs, by virtue of their assignment, acquired no right to the moneys to be earned by With-

erby & Gaffney under their contract with the government, for the reason the assignment was absolutely void, it being prohibited by section 3477 of the Revised Statutes of the United States. This is untenable. (*Erwin* v. *United States,* 97 U. S. 392; *Goodman* v. *Niblack,* 102 U. S. 556; *Bailey* v. *United States,* 109 U. S. 432; *Hobbs* v. *McLean,* 117 U. S. 567; *F. S. & T. Co.* v. *Shepherd,* 127 U. S. 494; *Lawrence* v. *United States,* 8 Ct. Cls. Rep. 253; *Jernegan* v. *Osborn,* 155 Mass. 207.) Unless the statute stood in the way, the instrument executed by Witherby & Gaffney to the plaintiffs, in equity transferred to them $3,000 of the moneys which they were to receive from the government. (*Field* v. *Mayor, etc.,* 6 N. Y. 179; *Hutchins* v. *Hebbard,* 34 N. Y. 24; *Develin* v. *Mayor, etc.,* 63 N. Y. 8; *People ex rel.* v. *Comptroller,* 77 N. Y. 45; *Brill* v. *Tuttle,* 81 N. Y. 454; *Jones* v. *Mayor, etc.,* 90 N.Y. 387; Story's Eq. Juris. §§ 1040, 1055; *Taylor* v. *Bates,* 5 Cow. 376; *Patterson* v. *Hall,* 9 Cow. 747; *Morton* v. *Naylor,* 1 Hill, 583; *Field* v. *Mayor, etc.,* 6 N. Y. 179; *De Forrest* v. *Bates,* 1 Edw. Ch. 393; *Ballou* v. *Boland,* 14 Hun, 355; *Barse* v. *Morton,* 43 Hun, 479; *Parker* v. *Syracuse,* 31 N. Y. 376; *Fairbanks* v. *Sargent,* 104 N. Y. 108; 117 N. Y. 320.)

ANDREWS, Ch. J. The determination of this appeal depends upon the true construction of section 3477 of the Revised Statutes of the United States. The general facts may be briefly stated. The firm of Witherby & Gaffney were contractors with the United States for building barracks at Sackets Harbor. The plaintiffs constituted the firm of York & Starkweather, and furnished to the contractors lumber and materials for the work of the value of $3,000 and upwards, which were used in the construction. During the progress of the work and before its completion, and on the 27th day of March, 1890, Witherby & Gaffney made a written assignment to York & Starkweather of $3,000 "of the money due, and to become due," to the assignors from the government on their contract, to apply on their indebtedness

to the assignees for the lumber and materials so furnished, and authorized the disbursing agent of the government, through whom the payments on the contract were made, to pay the plaintiffs $500 from the next estimate thereafter, and $2,500 on the completion of the contract, and when the balance coming to the assignors should become payable to them. Witherby & Gaffney paid the plaintiffs $500, but no further payment has been made. On May 15, 1890, the contract having been completed, the disbursing officer delivered to Gaffney, one of the contractors, a draft for $4,400, in payment of the amount unpaid on the contract, which he delivered on the same day to the defendants to secure them for liabilities, as indorsers and otherwise, previously incurred for the benefit of Witherby & Gaffney. The defendants, before they had parted with the draft, were notified by the plaintiffs of their claim and of the terms of the assignment to them, and they demanded that the defendants should pay them out of said draft the sum of $2,500, the amount remaining unpaid to them from Witherby & Gaffney, which the defendants refused to do. This action was thereupon brought to recover said sum.

The claim set up by the defendants in their answer, that prior to the assignment to the plaintiffs, Witherby & Gaffney had verbally assigned to them the money to become due on the contract, as security for their indorsements, was tried before the jury and found against them and need not be further considered. There can be no doubt that under the general rule of law prevailing in this state the plaintiffs, under the assignment of March 27, 1890, acquired an equitable, if not a legal, title to the money payable on the contract of Witherby & Gaffney with the government to the extent of $3,000, and that the defendants, having acquired possession of the draft for the final payment on the contract, by delivery from Witherby & Gaffney, to secure an antecedent liability, on being notified of the claim of the plaintiffs, held the draft and the fund it represented, as trustee of the plaintiffs, to the extent of their claim. (*Field* v. *Mayor, &c.*, 6 N. Y. 179 ; *Devlin* v. *Mayor, &c.*, 63 id. 8.)

62

But the contention is that the plaintiffs took nothing under the assignment to them, because, as is claimed, the transaction was void under section 3477 of the Revised Statutes of the United States, to which reference has been made. That section is as follows : " All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer ; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment or warrant of attorney to the person acknowledging the same."

This section has been considered in several cases by the Supreme Court of the United States. If that court has construed the section so as to determine the point involved in this case we should deem it our duty to follow its decision. The judgment we shall render will not, we suppose, be subject to review by the Supreme Court. We do not question the validity of the section in question, nor will our decision affect any right of the defendants based thereon. Their right, if any, rests upon the transfer of the draft after it came to the hands of Witherby & Gaffney. They seek to defeat the right of the plaintiffs under their prior assignment of a portion of the fund, and invoke section 3477 to establish that the assignment was void and conferred no right. But on a question of statutory construction of an act of Congress which has been determined by the Supreme Court of the United States, sub-

sequently arising in this court, we should feel bound to adopt
and follow the construction of that tribunal on the principle
of comity, although in a case where the ultimate jurisdiction
is vested in this court. This principle is especially important
to be observed in such a case, in view of the relation between
the Federal and State courts, not exercising, in all cases, a
co-ordinate jurisdiction, but engaged in the administration of
justice to a great extent between persons who are citizens
both of a state and of the United States. The decisions of the
tribunals of a state as to the true construction of the statutes
of its own sovereignty are followed by the Federal courts, and
it would be most unseemly and produce great confusion if
state courts should refuse to adopt the construction of the
Supreme Court of the United States, of Federal statutes.

The section in question was taken from the act of Congress,
approved February 26, 1863, entitled "An act to prevent
frauds on the treasury of the United States." Its object was
to protect the government. It was enacted, as was said by
Mr. Justice MILLER in *Goodman* v. *Niblack* (102 U. S. 556),
to prevent embarrassments to the government which might
arise if it was compelled to recognize rights of third persons
not parties to the original contract or transaction, and, second,
to shut the door to improper influences in prosecuting claims
before the departments or courts or Congress.

There are two theories of construction of the statute. One
is that, which gives the widest meaning to the words and which
makes a transfer or assignment of a claim or interest void not
only as to the government and its officers, but as to the parties
to the transfer or assignment. Upon this theory the money,
when paid over to the original claimant, cannot be reached in
his hands unless, after the allowance of the claim and the issuing
of a warrant for its payment, the provisions of the section were
complied with. This theory wholly forbids the acquisition
before this has been done of any right in the fund through
any transfer or assignment, however formal the instrument or
however just and innocent the transaction. The other theory
is that the objects of the statute are accomplished by a construc-

tion which makes an assignment or transfer made before the allowance of a claim void as between the claimant and the government, but leaves the transferee, after the fund has come to the hands of the claimant, to assert such legal rights against the fund and avail himself of such legal remedies to enforce them, as exist in other cases of transfer.

The Supreme Court has consistently maintained that a transfer or assignment made before the allowance of a claim, was void at the election of the government, and that as against the assignee or transferee, the government may wholly disregard it, and that payment made to the original claimant by the government is a good acquittance of the liability, although it had notice of the transfer at the time. But the court has also decided that the government may recognize such a transfer and that payment to the transferee will protect it against any subsequent claim of the original party. (*Bailey* v. *U. S.*, 109 U. S. 432.) The principal case relied upon by the defendants to sustain their contention is *Spofford* v. *Kirk* (97 U. S. 484), and if what Mr. Justice Miller in *Goodman* v. *Niblack* (*supra*) characterizes as the strong language of the opinion in that case, is to have the broadest application, there would be difficulty in holding that the assignment now in question can be upheld. But the transfer under consideration in *Spofford* v. *Kirk* was of part of a disputed claim then in controversy between the claimant and the government. The court soon began to depart from the rigid interpretation of the statute indicated in *Spofford* v. *Kirk*. In *Goodman* v. *Niblack* (*supra*) it was held that the statute did not embrace the case of a voluntary general assignment by an insolvent for the benefit of his creditors, and that a claim existing against the government in favor of the assignor passed by the assignment. Mr. Justice Miller in his opinion, referring to the statute, said : " Its sole purpose was the protection of the government and not that of the parties to the assignment." The case of *Hobbs* v. *McLean* (117 U. S. 567) shows a further relaxation of the strict rule declared in *Spofford* v. *Kirk*, and the court, referring to sections 3737 and 3477 of the Revised

Statutes, after stating that they were passed for the protec-- tion of the government, said : " The purpose was not to dictate to the contractor what he should do with the money received on his contract, after the contract had been performed." The case of *Freedman's Saving and Trust Co.* v. *Shepherd,* and *Shepherd* v. *Thompson* (127 U.. S. 494) has an important bearing upon the present case. The facts are complicated. The question related to the conflicting claims of parties to two drafts which had been issued and delivered by the government to an attorney for rent under a lease of premises made by one Bradley to the government in 1873, and to another sum of $787.50 paid by the government to a receiver for rent of the same premises. after June 6, 1878. One of the drafts was for rent for the year ending June 30, 1876, and the other for the rent for two years prior to June 30, 1878. Thompson, one of the parties. to the action, claimed to be entitled to the drafts as pledgee of the rents, under an agreement dated June 21, 1877, made between him and Bradley, the original lessor, and Shepherd,. his grantee. At the date of the pledge a suit was pending against the United States to recover the rent for the year end- ing June 30, 1876, in favor of Bradley. The case was finally decided in his favor in October, 1878. During the pendency of the suit a suit was brought for the rent for the two years ending June 30, 1878, and the second draft was given in set- tlement of that suit. Enough has been stated to show that Thompson claimed under a pledge made not only before an allowance of the rent due June 30, 1876, but while a suit against the United States was pending for its recovery, and that only part of the rents for the years 1877 and 1878, included in the pledge, for which the second draft was given, had become due when the pledge was made. Thompson's. right to the drafts was contested under section 3477 of the Revised Statutes, the claim being that the pledge was void. But this objection was overruled and the court sustained Thompson's claim to the drafts, and on appeal the judgment was affirmed. Mr. Justice Harlan, in pronouncing the opin--

ion of the court, said: "The simple question is whether the money received from the government shall be diverted from the purpose to which Bradley, Shepherd and Shepherd's trustees agreed in writing that it should be devoted, namely, the payment of the debts Thompson holds against Shepherd. This question must be answered in the negative, and in so adjudging we do not contravene the letter or spirit of the statute." The case, although many more circumstances appear than are here stated, seems to us to go far in sustaining the claim of the plaintiffs in the present action. We think that the question cannot be said to have been decided adversely to their contention in the Federal Supreme Court. In our opinion a just construction of the statute does not invalidate the transfer of Witherby & Gaffney to the plaintiffs, nor will the objects of the statute be defeated by the construction that such a transfer, made in the legitimate and usual course of business, in good faith, to secure an honest debt, while it may be disregarded by the government, is good as between the parties so far as to enable the transferee, after the government has paid over the money to the claimant, to enforce as against him or those who take with notice, the interest or lien given by the assignment. The fact that the government may refuse to recognize any transfer or assignment, in connection with the general principle of law which avoids all agreements contrary to public policy, will be a sufficient discouragement to illegitimate transactions, or, at all events, it is all the law can justly interpose, having due regard to the exigencies of business and the protection of innocent parties.

The Supreme Court of Massachusetts, in *Jernegan* v. *Osborn* (155 Mass. 207) reached substantially the same conclusion as that to which we have arrived.

The judgment should be affirmed.

All concur, except O' BRIEN, J., not sitting.

Judgment affirmed.