### NATIONAL BANK OF COMMERCE OF SEATTLE v. DOWNIE et al.
(two cases).

### SEATTLE NAT. BANK v. SAME (two cases).

(Circuit Court of Appeals, Ninth Circuit.  May 11, 1908.)

Nos. 1,527, 1,528, 1,529, 1,532.

BANKRUPTCY—SECURED CLAIMS—ASSIGNMENT OF CLAIMS AGAINST UNITED STATES.

    Under Rev. St. § 3477 (U. S. Comp. St. 1901, p. 2320), providing that assignments of claims upon the United States shall be void unless witnessed and acknowledged and made after the claim has been allowed and a warrant drawn therefor, the assignment by a bankrupt to a bank, as collateral security for money borrowed, of claims against the United States under contracts only partially performed, such assignments not being witnessed or acknowledged, was ineffective, and the claims passed by operation of law to the bankrupt's trustee for the benefit of general creditors.

Appeal and Petition for Revision of Proceedings of the District Court of the United States for the Northern Division of the Western District of Washington.

    Bausman & Kelleher, for Seattle Nat. Bank.
    George E. de Steiguer, for National Bank of Commerce of Seattle.
    Peters & Powell and Cooley & Horan, for appellees.
    Kerr & McCord, for trustee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge.  Arthur Gamwell and Philip Wheeler, partners under the firm name of Gamwell & Wheeler, were adjudged bankrupts in the District Court of the United States for the Western District of Washington, Northern Division, on the 16th day of April, 1907, and the same day R. E. Downie was appointed receiver of the partnership property.  Thereafter he was elected and qualified as permanent trustee, and by an order made June 20, 1907, was authorized to collect all sums of money due the bankrupts from the United States government or any department thereof.  On the 4th day of June, 1907, the National Bank of Commerce of Seattle filed its proof of debt against the bankrupt partnership, in the sum of $37,149.85.  The proof set forth that the only securities held by said corporation for

said debt were certain described claims against the United States government on account of supplies furnished and assigned to the bank by the said Gamwell & Wheeler to secure said indebtedness. These claims appear to be 16 in number, and amount in the aggregate to the sum of $33,517.48. The first claim is dated December 10, 1906, and the last February 15, 1907. On June 18, 1907, the Seattle National Bank filed its proof of debt against the bankrupt partnership for the sum of $22,582.19, with interest. The proof set forth that the only securities held by said corporation for said debt were certain described claims against the United States government on account of supplies furnished and assigned to the bank by said Gamwell & Wheeler to secure said indebtedness. The claims appear to be 61 in number and amount in the aggregate to $38,509.32. The first claim is dated September 25, 1906, and the last April 4, 1907.

The respondents filed objections to the allowance of these assigned securities. One of these objections was that the assignments were invalid under section 3477 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2320), and that the claims against the goverment belonged to the creditors of the bankrupts generally.

On the 10th of July, 1907, the parties hereto entered into a stipulation as to said assigned claims, as follows:

"That the facts in relation to the claims against the government of the United States, assigned by said bankrupts to the above-mentioned banks as collateral security for the indebtedness due from said bankrupts to said banks, and to the allowance of which claims as security for such indebtedness the above-named trustee and the Barber Asphalt Paving Company and the Mukilteo Lumber Company have objected to, are as follows: That each and all of said claims against the United States government, so assigned, were claims for money due from the government of the United States to the said bankrupt upon account of contracts entered into between said bankrupts and the United States, for the furnishing of materials by said bankrupts to various departments of said government. That said assignments were each and all voluntarily made in consideration of a loan made by said bank to said bankrupts at the time of said assignments and as collateral security for the repayment of said loans and without notice to the other creditors of said bankrupts. That all of such assignments were made after the entering into of said contracts, and after partial performance thereof by said bankrupts before the allowance of any of such claims or the ascertainment of the amount due thereon, or the issuing of any warrant for the payment thereof, and that none of said assignments were executed in the presence of any witnesses at all, and that none of them recite any warrant for the payment of the claim assigned, and that none of them were acknowledged by any officer having authority to take acknowledgment of deeds, or any other acknowledging officer at all, and that none of them were certified as being acknowledged by any officer. The said loans to each of said banks exceeded in amount the value of said collaterals so assigned to secure the same, and there is now due to each of said banks on account of said loans an amount in excess of the value of the said collaterals so assigned to each of said banks respectively. The claims of said banks and the objections thereto on file are made a part hereof."

The referee in bankruptcy, on the 22d of July, 1907, allowed the claim of the Seattle National Bank in the sum of $22,582.19, and interest, and the claim of the National Bank of Commerce in the sum of $37,149.85, and interest, and ordered and decreed that said banks were each of them respectively entitled to receive on account of claims against the United States government, so assigned to it and shown by

the claims of said bank respectively on file, whatever amount might be collected from the United States government of said claims, and the securities of said banks by reason thereof were allowed, and the trustee was ordered, as collections of said claims were made, to pay the same to the banks holding the assignments thereof. Thereupon the respondents, except the trustee, petitioned the District Court for a review of the order of the referee. Upon this review the judge of the District Court allowed the claims of the banks as general debts, but disallowed their claims of preference. The National Bank of Commerce of Seattle and the Seattle National Bank have brought this matter to this court for review, both by appeal and by petition.

The appellees rely upon the provisions of section 3477 of the Revised Statutes of the United States to support the order of the District Court. That section is as follows:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same."

This statute has been before the court in a number of cases and held applicable to all cases where the assignee seeks to enforce the assigned claim against the United States. United States v. Gillis, 95 U. S. 407, 416, 24 L. Ed. 503; St. Paul R. R. Co. v. United States, 112 U. S. 733, 28 L. Ed. 861.

In United States v. Gillis, supra, it was contended on behalf of the assignee of the claimant that the statute was applicable only to claims asserted before the Treasury Department, but the court said:

"We discover nothing in the reason, nothing in the mischief the act is plainly intended to remedy, and nothing in the language employed tending to warrant the admission of any exceptions from the comprehensive provisions made, nothing that can justify our holding that when Congress said all transfers or assignments, partial or entire, absolute or conditional, of claims against the United States shall be null and void, they meant they should be in operation (inoperative) only when presented to the accounting officers of the treasury, but effective when presented everywhere else."

It has also been held applicable to assignments in which a contract is made for the prosecution of a claim against the United States and an assignment is made of a portion of the claim or a lien created on it to secure payment for services rendered in prosecuting the claim. Ball v. Halsell, 161 U. S. 72, 16 Sup. Ct. 554, 40 L. Ed. 622; Nutt v. Knut, 200 U. S. 12, 26 Sup. Ct. 216, 50 L. Ed. 348. In the latter case the court, referring to the clause in the contract making the payment of the attorney's compensation a lien upon the claim asserted against the the government, said:

"In effect or by its operation it transferred or assigned to the attorney, in advance of the allowance of the claim, such an interest as would secure the payment of the fee stipulated to be paid. All this was contrary to the statute, for its obvious purpose, in part, was to forbid any one who was a stranger to the original transaction to come between the claimant and the government, prior to the allowance of a claim, and who, in asserting his own interest or share in the claim, pending its examination, might embarrass the conduct of the business on the part of the officers of the government."

It has also been held applicable to assigned orders drawn by the owner of a claim against the United States upon the attorneys employed by him in the prosecution of the claim, directing them to pay to a third person certain sums out of any money coming into their hands on account of the claim. Spofford v. Kirk, 97 U. S. 484, 24 L. Ed. 1032. In this case the court, referring to the language of the statute, says:

"It would seem to be impossible to use language more comprehensive than this. It embraces alike the legal and equitable assignments. It includes powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part or share thereof. It strikes at every derivative interest, in whatever form acquired, and incapacitates every claimant upon the government from creating an interest in the claim in any other than himself."

On the other hand, it has been held that the statute does not render invalid an assignment where the original claimant became a bankrupt and assigned his property to an assignee in bankruptcy. "It does not embrace cases where there has been a transfer of title by operation of law. The passing of claims to heirs, devisees, or assignees in bankruptcy is not within the evil at which the statute aimed." Erwin v. U. S., 97 U. S. 393, 397, 24 L. Ed. 1065.

It has also been held: That the statute did not embrace the case of a voluntary general assignment by an insolvent for the benefit of his creditors. Goodman v. Niblack, 102 U. S. 556, 26 L. Ed. 226; Butler v. Goreley, 146 U. S. 303, 13 Sup. Ct. 84, 36 L. Ed. 981. That it does not render invalid a contract of partnership to furnish supplies to the United States or a promise by one to another of the partners to pay a sum already due him under the partnership articles out of money to be received from the United States for such supplies. Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, 29 L. Ed. 940. That it does not affect the right of a mortgagee of real estate leased to the United States, or of a pledgee of the funds thereof, to recover from the mortgagors or pledgors the amount of funds paid to them by the United States. Freedman Saving & Trust Co. v. Shepherd, 127 U. S. 494, 8 Sup. Ct. 1250, 32 L. Ed. 163 and Shepherd v. Thomson, Id. That its inhibition of powers of attorney, executed in advance of the allowance of the claim and the issuing of a warrant therefor, cannot be used to compel a second payment after the amount thereof has been paid to the person authorized by the claimant to receive it. Bailey v. United States, 109 U. S. 432, 3 Sup. Ct. 272, 27 L. Ed. 988. That it does not prevent any court of competent jurisdiction as to subject-matter and parties from making such orders as may be necessary or appropriate to prevent one who has a claim for money against the government from withdrawing the proceeds of such claim from the reach of creditors, provided such orders do not interfere with the examination and allowance or rejection of such claim by the proper officers of the

government, nor in any wise obstruct any action that such officers may legally take under the statute relating to allowance or payment of claims against the United States. Price v. Forrest, 173 U. S. 410, 423, 19 Sup. Ct. 434, 43 L. Ed. 749. The purpose of the statute is to protect the government, and not the parties to the assignment. Goodman v. Niblack, supra. Hence, where a claim has been allowed by the accounting officers of the United States, a warrant issued therefor and delivered to the claimant, the government is no longer concerned with his disposition of the draft or the funds which it represented. York v. Conde, 147 N. Y. 486, 42 N. E. 193; Farmers' National Bank v. Robinson, 59 Kan. 777, 53 Pac. 762.

In the present case, the claims of Gamwell & Wheeler against the government of the United States were voluntarily assigned after entry into the contracts and after partial performance, but before the allowance of any such claims, the ascertainment of the amount due thereon, or the issuing of any warrant for the payment thereof. None of the assignments was executed in the presence of any witnesses, and none of them recites any warrant for the payment of the claims assigned, and none of them was acknowledged by any officer having authority to take acknowledgments of deeds, and none of them was certified as being acknowledged by any officer. These assignments are therefore within the express language of the statute, and not within any of its exceptions. They are also within the terms of the statute as interpreted by the Supreme Court in Spofford v. Kirk, supra, in St. Paul & Duluth R. R. v. United States, supra, in Ball v. Halsell, supra, and not within the exceptions mentioned in any of the other cases to which reference has been made. But the transfer of these claims to the trustee in bankruptcy by operation of law comes within the exception declared by the Supreme Court in Erwin v. United States, supra. It follows that the assignments in question are null and void, and that the trustee in bankruptcy is the proper person to receive from the officers of the United States government any and all sums due to the said bankrupts, which, when received, are a part of the general assets of the bankrupt's estate for the benefit of all creditors alike, and without any preference in favor of either of said banks.

The order of the District Court in each of the above-entitled cases is affirmed.