OPINION OF THE COURT
Leo F. Hayes, J.
CNY Centro, Inc., fired plaintiff on March 11, 1982. Believing that the grounds for his termination were insufficient, he filed a grievance on March 24,1982, a grievance which two days later was rejected by Centro. According to the collective bargaining agreement then in force the defendant union had seven days to notify Centro in the event it wished to arbitrate plaintiff’s grievance.[1] The union did not file such a notice. In December, 1982, the union told plaintiff that pursuing his grievance would be futile.
This suit was commenced 10 months later, in October, 1983. In separate causes of action plaintiff alleges that the *307 union’s failure to arbitrate his grievance constitutes negligence as well as a breach of the collective bargaining agreement. A third cause of action alleges that the union falsely represented to plaintiff that it was pursuing his grievance when in fact it was not.
The union moves to dismiss, arguing that the complaint seeks redress for matters preempted by Federal law, and that the six-month Statute of Limitations for unfair labor practice claims bars this suit. Plaintiff insists that his claims are cognizable in this court and that, having been cast in traditional contract and tort molds, are limited only by the usual rules governing such actions.
IS THIS LAWSUIT PREEMPTED BY FEDERAL LAW?
According to the union, plaintiff is essentially charging unfair labor practices even though it looks like a straightforward contract and tort case. Since Congress has vested in the National Labor Relations Board (NLRB) full power to regulate unfair labor practices, the union says that this State court lacks jurisdiction.
Assuming for the moment that all three of plaintiff’s causes of action add up simply to a charge of unfair representation — undeniably an unfair labor practice under Federal law — this court nevertheless has jurisdiction.
The highest court of this State and of the United States have spoken on this issue, each concluding that State courts can entertain an unfair representation claim without compromising Federal labor policy. In Matter of Phalen v Theatrical Protective Union No. 1 (22 NY2d 34, 38-39) the court said:
“Turning first to the argument that, because petitioners’ grievances are ‘arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board’ (see San Diego Unions v. Garmon, supra, p. 245), we are of the opinion that under the recent decisions of the United States Supreme Court in Vaca v. Sipes (386 U.S. 171) and Mangus v. A. C. E. Freight, Inc. (386 U.S. 482, decided in a brief Per Curiam opinion under the authority of Vaca v. Sipes but reported below at 6 Ohio App. 2d 87 [Ct. of App. of Ohio]), *308 considerably limiting Garmon’s seemingly absolute ban on courts’ exercising jurisdiction over controversies ‘arguably subject to § 7 or § 8 of the Act’ (see, especially, Mr. Justice White’s opinion for the court in Vaca v. Sipes, supra, p. 179, and Mr. Justice Fortas’ concurring opn., p. 199), our courts may exercise jurisdiction over the instant controversy.
“As we read this petition it charges the respondent labor union with violation of its Federal statutory obligation under the National Labor Relations Act ‘to serve the interests of all members [of bargaining units for which it is exclusive bargaining agent] without hostility or discrimination toward any’ (Vaca v. Sipes, supra, p. 177). In a series of decisions going back over many years the United States Supreme Court has recognized this duty of unions and the right of employees to obtain enforcement of the union’s obligation of fair representation in the courts (see authorities cited in Vaca v. Sipes, supra, p. 177), and in Vaca v. Sipes we are told that, just because the NLRB belatedly recognized that unfair representation could be interpreted as an unfair labor practice in violation of section 8 (subd. [b]) of the act (see Miranda Fuel Co., 140 N.L.R.B. 181 [1962]), the courts are not ousted of their jurisdiction in this field. In line with Vaca v. Sipes, the reasoning of which we believe is applicable here, we are of the opinion that our courts have jurisdiction to entertain this action.” (See, also, Abbott v Van Acker, 70 AD2d 1018; Belknap, Inc. v Hale, 463 US 491, a recent preemption case, is in harmony with the Court of Appeals interpretation of Federal law in this area.)
So, even if the complaint be viewed merely as a thinly disguised unfair representation claim, this court has jurisdiction.
ARE PLAINTIFF’S CLAIMS TIME BARRED?
Relying upon DelCostello v International Brotherhood of Teamsters (462 US 151), defendant argues that the six-month Statute of Limitations governing claims under the National Labor Relations Act (US Code, tit 29, § 160, subd [b]) applies to this case. In his Federal court action DelCostello alleged that his union breached its duty of fair representation by mishandling his grievance and arbitration *309 proceedings. The question was whether or not such an action was governed by a New York State Statute of Limitations. While recognizing the usual practice of looking to State law in such procedural matters, the court nevertheless declined to borrow either of the two suggested New York State Statutes of Limitation. The court pointed out that Erie R. R. Co. v Tompkins (304 US 65) does not mandate borrowing of State law to fill gaps in Federal statutes. Since the duty of fair representation emanates from the National Labor Relations Act, and since the NLRB has consistently held that all breaches of a union’s duty of fair representation are unfair labor practices, the court held that the six-month period of limitations for filing Federal unfair labor practice charges is the appropriate period of limitations.[2]
It has long been the practice in this State to determine the applicable Statute of Limitations according to the gravamen or essence of the cause of action (Western Elec. Co. v Brenner, 41 NY2d 291, 293; Brick v Cohn-Hall-Marx Co., 276 NY 259, 264).[3]
Though couched in terms of contract and negligence, plaintiff’s first two causes of action turn on allegations of unfair union representation. The first cause of action concludes with these allegations:
“9. In pursuance of said breach of duty to fairly represent plaintiff, the said defendant did the acts, omissions, and things in a fraudulent, dishonest manner, so as to cause plaintiff to lose his right to arbitrate the Employer’s decision to terminate plaintiff, and to foreclose the reinstate *310 ment of plaintiff to his employment and to foreclose all procedures whereby plaintiff could seek relief.
“10. That as a result of defendant’s breach of his contractual obligations, the plaintiff suffered damages.”
The second cause of action contains these allegations:
“20. Defendant and its agents negligently and carelessly failed to perform its duty as representation of the plaintiff, in that it failed to serve, within seven (7) days of the receipt of the answer rejecting plaintiff’s grievance, a notice to proceed to arbitration and to take other measures so as to preserve plaintiff’s rights.
“21. In violation of its duty to properly represent and advise plaintiff of his rights and remedies in defense of the plaintiff’s termination of employment hereinbefore alleged, the defendant negligently,, carelessly, and wrongfully advised plaintiff to refrain from taking any action personally.” (Italics the court’s.)
If a disgruntled union member wants to press claims of unfair representation before the NLRB, he has six months to do so. And if he opts for a Federal lawsuit, like DelCostello, he has six months to act. If he foregoes either of those options in favor of a New York State court action, he must initiate his legal action within six months.
As the court noted in DelCostello, the duty of fair representation owes its existence to the National Labor Relations Act (DelCostello v International Brotherhood of Teamsters, 462 US 151, _, n 14,103 S Ct 2281, 2290, n 14, supra; see, also, Matter of Phalen v Theatrical Protective Union No. 1, 22 NY2d 34, supra). The plaintiff’s corresponding right to be fairly represented was created not by the State Legislature, but by the Congressional policy implied in the Federal statutory scheme. Since it is within the power of the Federal courts to declare the governing law in an area related to the operation of a Federal statutory program (United States v Little Lake Misere Land Co., 412 US 580, 592-594) it is only fitting that the State courts apply rules developed by the Federal judiciary for the enforcement of Federally created rights — even in a case where the State court undeniably has jurisdiction (McKinney’s Cons Laws of NY, Book 1, Statutes, § 261). The need *311 for uniformity among procedures governing similar claims (See Auto Workers v Hoosier Corp., 383 US 696, 701-703) is obvious when one considers the great confusion that would result were State courts not to follow in the footsteps of the United States Supreme Court in areas regulated by Congress (York v Conde, 147 NY 486, 490-491).[4]
Application of the six-month Statute of Limitations is, as plaintiff realizes, fatal to the first two causes of action.
Plaintiff, however, contends that the statute should not run during the time when the union was leading him to believe it was pursuing his grievance. But even this will not avail plaintiff since he started this action in October, 1983, more than six months after he says the union admitted (in December, 1982) it was not going to carry his grievance further.
The third cause of action, charging fraudulent misrepresentation, is conceptually different from plaintiff’s other claims. The first two causes allege union conduct that strikes at the heart of the Federal policy implied under the scheme of the National Labor Relations Act (see DelCostello v International Brotherhood of Teamsters, 462 US 151, _, 103 S Ct 2281, 2290, supra). Plaintiff’s third cause of action focuses not on the conduct of the union in its capacity as a union, but rather on alleged deceitful conduct of a kind historically recognized in this State as tortious.[5]
Unlike the other claims, which trace their heritage to Federal legislation, this cause of action seeks primarily to vindicate personal or individual rights traditionally safeguarded by the common law of this State. Limitations on the right to pursue such claims are determined by State law.[6]
*312 New York limits the time to bring a fraudulent misrepresentation claim to six years under CPLR 213 (subd 8). Therefore, plaintiff’s third cause of action, still little more than a year old, is timely.
The motion to dismiss is granted as to the first and second causes of action and denied as to the third cause of action.

. The agreement provided in pertinent part: “2.09 If the grievance is not settled by the answer of the General Manager or his designee, or the Union representative, in 2.08 above, the grievant, through the Union may take the matter to arbitration in accordance with this paragraph. The Union or Employer shall serve within seven (7) days of the receipt of the answer in 2.08 or the expiration of seven (7) days in the absence of such an answer in 2.08, a notice to proceed to arbitration to be sent to the General Manager or Union Business Agent respectively, which notice shall contain its designated Arbitrator.”

. Ostensibly, the court opted for the Federal rule because there was nothing in New York jurisprudence close enough to DelCostello’s hybrid section 301/fair representation claim (see Labor Management Relations Act of 1947, § 301 [US Code, tit 29, § 185]). But one senses that the court was really concerned with giving fair representation claimants enough — but not too much — time to retain counsel and pursue the claim. The six-year statute governing contract actions in New York had already been discarded (United Parcel Serv. v Mitchell, 451 US 56). New York’s three-year period for bringing a malpractice action against an attorney — the closest thing New York has to the fair representation claim — was considered too long to jibe with the policy favoring a rapid resolution of labor disputes. The 90 days New York allows for an action to vacate an arbitrator’s award was too short. The practical solution appeared in the form of the medium-length six-month period limiting unfair labor practice claims before the NLRB.

. In the usual case a New York court will affix an appropriate New York Statute of Limitations even when the claim grows out of Federal law (see, e.g., Staffen v City of Rochester, 80 AD2d 16, where the court applied General Municipal Law, § 50-i, to a State action alleging a violation of civil rights under US Code, tit 42, §§ 1983, 1985).

. The court recognizes that the precise issue before the Supreme Court in DelCostello was not the construction of a Federal statute. However, the court did declare a rule necessary and appropriate to effectuate the Federal statutory pattern. The principle of comity recognized long ago in York v Conde (supra) extends in my judgment to this closely analogous situation.

. As already mentioned, it is the essence of the claim that determines the appropriate Statute of Limitations. Where, for example, a physician charged with malpractice was also alleged to have deceived the plaintiff, the court held that the deceit claim (which was intertwined with allegations of malpractice) survived even though the malpractice claim fell to the Statute of Limitations (Simcuski v Saeli, 44 NY2d 442).

. Questions of comity between the State and Federal courts are absent where the plaintiff seeks redress in State court for wrongs traditionally denounced in that State.
Even though a preemption case, Belknap, Inc. v Hale bolsters this view by recognizing the substantial interest a State has in protecting its citizens from misrepresentations *312 that have caused them grievous harm (463 US 491,_, 103 S Ct 3172, 3183).